IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.: 5:24-CV-00031-BO

| | |
|---|---|
| RONALD S. LASORSA,<br><br>                          Plaintiff,<br><br>v.<br><br>J. EDWARD BELL III, ESQ.,<br><br>                          Defendant. | DEFENDANT'S MEMORANDUM<br>IN SUPPORT OF<br>DEFENDANT'S MOTION TO DISMISS |

On behalf of Defendant J. Edward Bell, III ("Mr. Bell" or "Defendant"), undersigned counsel respectfully submits Defendant's memorandum of law in support of Defendant's motion to dismiss Plaintiff Ronald S. Lasorsa's ("Plaintiff") Complaint [D.E. 1].

## Introduction

Mr. Bell is appreciative of Plaintiff's service to our country and is saddened to hear of Plaintiff's suffering and that of his family. No parent should have to bury a child. Plaintiff's concerns about the Camp Lejeune Justice Act (the "Act"), as voiced in his Complaint, appear to stem from his pain and his sincerely held beliefs about how to help others. While admirable, those concerns do not support a legal claim against Mr. Bell and thus, Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Statement of Facts and Summary of the Case

Plaintiff's Complaint focuses on three points: (i) the Act should not have included the dates August 1, 1953 and December 31, 1987 because he was stationed at Camp Lejeune after 1987; (ii)

1

the Act should not have included the limitation in section 804(j)(2)[1]; and (iii) Mr. Bell has failed to stop unnamed and unidentified fraud in the Camp Lejeune Water Litigation, a complex federal case proceeding bearing case number 7:23-cv-000897 pending before all four judges of the United States District Court for the Eastern District of North Carolina ("CLWL").

The first two points are political disagreements that Plaintiff has with the way the United States Congress ("Congress") wrote the Act. The appropriate forum for his concerns is Congress. Nevertheless, Plaintiff converts his criticisms of the Act into legal allegations against Mr. Bell.

Plaintiff asserts that Mr. Bell negligently damaged him by including the dates and limitation period noted above in the Act. He also asserts that by including those dates and limitation period in the Act, Mr. Bell deprived Plaintiff of his Fourteenth Amendment right to due process. Finally, Plaintiff contends that Mr. Bell owes Plaintiff a personal duty to eliminate fraudulent claims from the Camp Lejeune litigation process. None of Plaintiffs' claims, however, have legal merit and must be dismissed.

## Argument

I. **Standard of Review**

As this court stated in *Barrett v. Sec.*,

> When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts plead "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do not nudge

---

[1] Section 804(j)(2) provides "A claim in an action under this section may not be commenced after the later of- (A) the date that is two years after the date of enactment of this Act."

the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570[2]

While Plaintiff has filed his complaint *pro se*, he is still obligated to comply with the pleading standards required by the Federal Rules and Supreme Court precedent.[3] Notwithstanding the leniency traditionally granted to *pro se* litigants, pursuant to a video posted on Plaintiff's own website, he has owned a law firm in the District of Columbia and may own a law firm in Arizona.[4] To the extent Plaintiff has indeed owned a law firm or multiple firms, Defendant respectfully submits that he not be granted the leniency afforded to other *pro se* litigants.

II. **Overview**

As noted above, Plaintiff's first cause of action asserts a claim of negligence against Mr. Bell arising from Congress's decision to include the August 1, 1953 and December 31, 1987 dates in the Act as well as Congress's decision to include section 804(j)(2) in the Act. Compl. at ¶ 56. Plaintiff also contends that Mr. Bell has negligently failed to establish a system to eliminate fraudulent claims. Compl. at ¶ 62, 64-66.

Plaintiff's second cause of action asserts that Mr. Bell violated Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution. Compl. at ¶ 86.

III. **Congress Wrote the Camp Lejeune Justice Act**

As an initial matter, a foundational premise of Plaintiff's complaint is that Mr. Bell wrote the Act and thus, bears personal responsibility for what Plaintiff perceives are the shortcomings of the Act. Mr. Bell has proudly championed the cause of those impacted by the contaminated water

---

[2] No. 5:10-CV-469-BO, 2013 WL 12113183, at *1 (E.D.N.C. Feb. 20, 2013), aff'd sub nom. Barrett v. USA-Soc. Sec., 539 F. App'x 289 (4th Cir. 2013)A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Attain*, 478 U.S. 265, 283 (1986).
[3] *Creque v. Luihn Foods Sys.,* No. 5:12-CV-00783-FL, 2013 WL 2123465, at *2 (E.D.N.C. Feb. 27, 2013), *report and recommendation adopted sub nom. Creque v. Luihn Food Sys.*, No. 5:12-CV-783-FL, 2013 WL 2123090 (E.D.N.C. May 15, 2013)
[4] https://www.victorydfi.com/faqs see FAQ No. 6 entitled "How can someone who isn't an attorney own a law firm?"

at Camp Lejeune for over fifteen years.  As part of those efforts, he worked with members of the United States Congress and their staff on what would become the Camp Lejeune Justice Act.  It was, however, the United States Congress which wrote and passed the Act, as it is the case with all federal legislation.[5]

## IV. Plaintiff Fails to Establish a Duty Owed to Him or a Breach and Therefore Cannot Prove Negligence

As this court stated in *Cantrell v. United States*,

> In order to recover in a negligence action under North Carolina law, a plaintiff must show an actionable duty, a breach of the duty, actual and proximate causation, and damages. *Southerland v. Kapp*, 59 N.C.App. 94, 95, 295 S.E.2d 602 (1982). […] Absent such a duty, [a] negligence action does not survive.[6]

"Negligence is not presumed from the mere fact of injury. Plaintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, nonsuit is proper."[7]

Plaintiff asserts Mr. Bell owes a duty to Plaintiff personally by virtue of (i) Mr. Bell writing the Act; and (ii) Mr. Bell's appointment as Lead Counsel by this Court in the CLWL.  Plaintiff contends that Mr. Bell negligently breached his duty to Plaintiff by (i) inserting the August 1, 1953 and December 31, 1987 dates in the Act and thus, excluding him; (ii) including the limitations period set forth in section 804(j)(2) of the Act; and (iii) failing to establish a protocol to control individual law firms' intake process in hopes of excluding fraudulent claimants from the Camp Lejeune Water Litigation process.

---

[5] Indeed, it was the 256 members of the United States House of Representatives and 84 members of the United States Senate that voted to pass the PACT Act, which included the Camp Lejeune Justice Act. https://www.congress.gov/bill/117th-congress/house-bill/3967/all-actions?overview=closed&q=%7B%22roll-call-vote%22%3A%22all%22%7D#:~:text=Action%20By&text=Senate-,Passed%20Senate%20with%20an%20amendment%20by%20Yea%2DNay%20Vote.,Record%20Vote%20Number%3A%20230.
[6] *Cantrell v. United States*, 735 F. Supp. 670, 672 (E.D.N.C. 1988).
[7] *Cox v. Waffle House, Inc.*, No. 5:19-CV-294-BO, 2021 WL 141694, at *2 (E.D.N.C. Jan. 14, 2021) (quoting *Goynias v. Spa Health Clubs, Inc.*, 148 N.C. App. 554, 556 (2002) (citation omitted).

## A. Mr. Bell Does Not Owe Plaintiff a Duty

Plaintiff's negligence claim fails on the first element: Mr. Bell does not owe a duty to Plaintiff.

First, Plaintiff contends that Mr. Bell wrote the Act and thus, personally owes a duty to Plaintiff for what Plaintiff perceives are the shortcomings of the Act. Compl. at ¶¶ 56 and 62. As noted above while, Mr. Bell proudly championed the cause of those impacted by the contaminated water at Camp Lejeune, Congress wrote and passed the Act. That Mr. Bell played a role in championing the Act does not create an actionable duty between Mr. Bell and Plaintiff that would sustain Plaintiff's negligence claims. Such an argument is without legal precedent and would result in every individual or organization who devotes time, effort, money or passion to a cause that ultimately yields an act signed into law owing a duty to every person covered *or not covered* (as is the case here) by said act. Such an outcome has not been, and should not be, held to be the basis for a "actionable duty" between Mr. Bell (and others like him that privately engage in the political process) and Plaintiff.

Second, Plaintiff contends that Mr. Bell's appointment as Lead Counsel in the CLWL creates a personal duty between Mr. Bell and Plaintiff. Compl. at ¶¶ 39, 41, 64-66. Plaintiff's assertion is incorrect.

The relationship between court-appointed leadership and individual plaintiffs was explored in *Casey v. Denton*.[8] In *Casey*, plaintiff sued the lead and liaison counsel appointed by the court in a multi-district litigation. Plaintiff alleged that the court-appointed counsel owed a duty to the plaintiff, personally, by virtue of the order appointing them.[9] The court rejected plaintiff's

---

[8] *Casey v. Denton*, No. 3:17-CV-00521, 2018 WL 4205153, at *1 (S.D. Ill. Sept. 4, 2018).
[9] *Id*. at *1 and *2.

allegations, finding that the plaintiff had failed to establish that lead and liaison counsel owed plaintiff a duty.[10]

The court began its analysis by recognizing the responsibilities the court placed on lead and liaison counsel in its appointment order then moved to assess how those responsibilities fit within the broader scope of the litigation:

> It is important to highlight the purposes multi-district litigation leadership counsel serves and why finding in any other way than the Court finds now would ultimately unravel the benefits and assistance such lead roles lend. Because of the complexities and sheer amount of information an MDL presents when compiling hundreds or even thousands of individual cases, "traditional procedures in which all papers and documents are served on all attorneys and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily." Manual for Complex Litigation, § 10.22. It is often the case where, to avoid being bogged down and wasteful of judicial resources, a court will need to institute procedures "under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation." Id. (emphasis added).
>
> Here, the undersigned selected and appointed Lead and Liaison Counsel specifically to aid in the fair, efficient, and economical running of the [] MDL; their duties to plaintiffs enumerated in [appointment order].[11]

Against that context, the court succinctly stated "lead and liaison counsel do not owe a fiduciary duty to each and every MDL plaintiff in the traditional sense. Rather, lead and liaison counsel should put the common and collective interests of all plaintiffs first while they carry out their enumerated functions."[12]

As a matter of policy, the court noted that if it were to hold that lead and liaison counsel owed plaintiff a duty, such a result "would make such leadership positions and unmanageable" and would create a scenario in which "[n]o attorney would seek appointment to the position due to the

---

[10] *Id.* at *7.
[11] *Id.* at *4–5.
[12] *Id.* at *5.

enormous resources that would be necessary to dedicate to the cause – time wise and staff wise. Charging leadership counsel with this nearly endless amount of responsibility would alter the nature and substance of the position, so much so, that the MDL format would cease to allow for the efficient handling of large, coordinated litigation."[13]

While the CLWL is not a multi-district litigation case, it has many of the complexities and hallmarks of such a proceeding: tens of thousands of claimants and potential litigants, multiple harms, an ecosystem of plaintiffs' counsel. All four judges of the United States District Court for the Eastern District of North Carolina entered Case Management Order No. 1 in the CLWL case appointing Mr. Bell as lead counsel, six other attorneys as Co-Lead Counsel, two liaison counsel and one attorney a member of the Resolution Committee. Mr. Bell was honored by his appointment and is committed to working for the benefit of all those impacted by the contaminated water at Camp Lejeune, as he has for over fifteen years. However, as was the case in *Casey*, Case Management Order No. 1 does not create a personal duty between Mr. Bell and Plaintiff of the type needed to sustain a negligence claim. To hold otherwise would result in the same issues identified in by the *Casey* court.

### B. Even if There was a Duty, Mr. Bell Did Not Breach It

Plaintiff has also failed to allege that Mr. Bell has breached any supposed duty, though none such duty exists. With respect to Plaintiff's perceived shortcomings with the Act, responsibility for those rests with Congress, which wrote the Act. With respect to the alleged fraudulent conduct in the CLWL, Plaintiff has not alleged any facts to support his conclusory statements of "intake fraud and identity theft that currently exists in Mass Tort third party finance" as a whole or the CLWL in particular. As has been noted in various filings with the court in the

---

[13] *Id*. at *6.

CLWL master docket (Case No. 7:23-cv-897), the court-appointed leadership group is working diligently to establish databases and processes for this case with the goal of helping eligible claimants. Plaintiff appears disappointed that he was not selected by the Court or court-appointed leadership to lead these efforts. Indeed, part of the relief Plaintiff seeks is the "implementation of a process specifically developed by Plaintiff based on unmatched experience and expertise with intake fraud and identity theft." Compl. Pg. 15 ¶ at 4. He also seeks to use his program to settle all claims in the CLWL. Compl. Pg. 15 ¶ at 5. Plaintiff's disappointment does not amount to a breach to sustain a negligence claim, nor does Plaintiff's belief that only he can build a better system.

Accordingly, for the reasons set forth above, Plaintiff's negligence claim fails as a matter of fact and law and should be dismissed.

## V. Plaintiff's Claim Under the Fourteenth Amendment Fails

Plaintiff asserts, incorrectly, that Mr. Bell's wrote the Act and thus, his inclusion of Section 804(j)(2) and the inclusion of the August 1, 1953 and December 31, 1987 dates in Section 804(b) violated his rights under the Fourteenth Amendment of the United States Constitution. Compl. at ¶¶ 86, 89, 101. Plaintiff further asserts that Mr. Bell's failure to address alleged, yet unspecified, fraud in the Camp Lejeune process violates Plaintiff's rights under the Fourteenth Amendment. Compl. at ¶¶ 97-99.

However, the Fourteenth Amendment only applies to acts of a *state* government and is not applicable to actions taken by the United States federal government.[14] Therefore, the Act, which is a federal creation of the United States Congress, cannot support a claim under the Fourteenth

---

[14] *See*, *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm*., 483 U.S. 522, 543, 107 S. Ct. 2971, 2984, 97 L. Ed. 2d 427 (1987) "The [plaintiff] invokes the Fourteenth Amendment for its discriminatory enforcement claim. The Fourteenth Amendment applies to actions by a State. The claimed association in this case is between the [Defendant] and the Federal Government. Therefore, the Fourteenth Amendment does not apply.").

Amendment. Accordingly, Plaintiff's claims under the Fourteenth Amendment, which are solely predicated on the Act, fail as a matter of fact and law.

Even if Plaintiffs' claims under the Fourteenth Amendment were to apply to the Act, they would fail as "the Due Process Clause protects individuals only from governmental and not from private action."[15] Purely private conduct, "no matter how discriminatory or wrongful," is not actionable under the Fourteenth Amendment.[16] However, an individual's conduct may be subject to the Fourteenth Amendment if it rises to the level of state action, which requires proof that the alleged constitutional deprivation was (1) "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State" and (2) that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."[17] There are no factual allegations in the Complaint that rise to the level of conduct to support a finding of "state action" under the Fourteenth Amendment. Indeed, if Plaintiff's argument were to prevail, every individual or organization who devoted time, effort, money or passion to a cause that ultimately yielded an act signed into law would be a "state actor." Such an outcome does not fall within the narrow scope of "state action" and would yield a negative public policy outcome. Accordingly, Plaintiff's second cause of action should be dismissed.

## Conclusion

Plaintiff's Complaint distills down to criticism of the Camp Lejeune Justice Act and the way in which Mr. Bell and the other court-appointed counsel in the Camp Lejeune Water Litigation manner are managing the litigation. While everyone is entitled to their points of view, such

---

[15] ."[15] *Illsley v. Truist Bank*, No. 5:23-CV-97-BO-RJ, 2023 WL 3690094, at *3 (E.D.N.C. May 26, 2023) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)). *See also, DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.")
[16] *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001).
[17] *Lugar*, 457 U.S. at 937.

criticism does not constitute a legally cognizable claim for relief in court and thus, Plaintiff's complaint should be dismissed.

This 13th day of February, 2024.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

/s/ Jeremy A. Stephenson
Jeremy A. Stephenson, N.C. Bar 34623
525 North Tryon Street, Suite 1600
Charlotte, NC 28202
T: 704.302.1330
F: 704.302.1331
E: Jeremy.Stephenson@wilsonelser.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 13, 2024 the aforementioned **DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was filed via ECF filing which will serve all counsel of record in the above-referenced matter:

>Ronald S. Lasorsa
>121 Sharpsburg Road
>Sharpsburg, KY 40374
>rsl@nobetteradvocate.com
>*Pro Se Plaintiff*

This 13th day of February, 2024.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

/s/ Jeremy A. Stephenson
Jeremy A. Stephenson, N.C. Bar 34623
525 North Tryon Street, Suite 1600
Charlotte, NC 28202
T: 704.302.1330
F: 704.302.1331
E: Jeremy.Stephenson@wilsonelser.com
*Attorney for Defendant*