**From:** Ronald Lasorsa rsl@nobetteradvocate.com
**Subject:** Case 5:24-cv-00031-BO-RN Lasorsa v. Bell
**Date:** April 14, 2024 at 10:36 AM
**To:** jeremy.stephenson@wilsonelser.com, enza.pilla@wilsonelser.com



Dear Mr. Stephenson,

I am following up on our conversation on Friday, April 5th. As discussed, I do not intend to disrupt Mr. Bell's duties as lead counsel in the ongoing Camp Lejeune litigation. I only wish to help him most effectively help those affected by the government's actions. I am frankly very disappointed by the Navy's conduct during this process, and I believe I can significantly contribute to the best interest of all involved.

The true significance of this lawsuit is not just its scale but also its potential to revolutionize the Navy's 'Elective Option' settlement process. By securing a court order for a monumental 10,000-claim case study, I intend to pave the way for a more efficient and just resolution of future military service-related toxic exposure lawsuits.

This is a unique opportunity for Mr. Bell to be part of a transformative change in the legal landscape.

My project is strategically scheduled to commence **on August 12th, 2024**. This timing is not arbitrary but carefully designed to avoid disrupting ongoing proceedings ahead of bellwether trials. The project will run for a maximum of 12 months or until the study is completed, focusing on Tier 1 and 2 injury claims with a length of exposure between 1 and 5 years.

This meticulous planning ensures the smooth execution of the project, assuring the EDNC of a well-managed process.

With the permission of the EDNC and the endorsement of Mr. Bell, a key stakeholder in this project, I will conduct a series of 1,000 claim campaigns like the one outlined in the SEC Form C attached to this email.

This incremental approach will allow me to refine my process to achieve my goals while providing regular updates to the EDNC and Plaintiff Leadership.

The results of this case study will ultimately be presented to the Congressional Budget Office (CBO), General Accounting Office (GAO), Congressional House Oversight Committee, and Senate Veterans Affairs Committee to lobby Congress to pass a version of the Toxic Exposure Fund Improvement Act of 2024.

I will finance this process by raising capital through a series of securities offerings, Reg CF, Reg D, and Reg A, to raise $50MM from unaccredited individual investors and accredited organizations.

My source of capital is fundamentally different from other litigation funders participating in this litigation because it introduces a concept I refer to as the "Victory 10x Impact Enhancement" for IRS 501c3s and 501c4s. This process is described in detail in the attached Form C/A.

However, in summary, it will provide a privately funded solution to some of the Veteran community's most pressing issues, such as food insecurity, homelessness, toxic exposure remediation treatment, and PTSD suicide prevention.

The social impact of this project is compelling. However, the economics of this project will still be highly lucrative to the ten law firm participants.

As an asset manager, I have structured a 100X ROI for each law firm that executes my 'Prime Brokerage Agreement,' included in the SEC Form C/A. I have attached it to this email for your review.

This is a unique opportunity for law firms that wish to work with me to make a genuine difference in the Veteran community while reaping significant financial rewards.

For clarity, each participating law firm will make a one-time co-investment of $100,000. This non-refundable payment will give each lawyer a potential economic return on investment of up to $10,000,000 in legal fees.

I will explain this process more thoroughly when Mr. Bell and I meet

I will explain this process more thoroughly when Mr. Bell and I meet.

I propose Mr. Bell, his CFO, and the Bell Law Group public relations team make themselves available to discuss the project so that we may jointly resolve this matter in the best interest of all those who have been poisoned during their military service.

Lastly, I see you filed a motion in the central CLJA docket, but the motion isn't viewable in Pacer. Please send me a copy as soon as possible.

I'm really looking forward to resolving this amicably and productively.

Respectfully,

Ron Lasorsa
Pro Se



20240412 Victory Litigation Fund I, LP Form CA.pdf