Submission Number 16651-670-887-718 was submitted on Friday, October 07, 2022 at 02:18:22 PM EDT

This PDF was generated on Friday, October 07, 2022 at 02:18:32 PM EDT

Thank you for contacting the United States Securities and Exchange Commission. This automated response confirms that your submission has been received successfully. We are always interested in hearing from the public, and your submission will be given careful consideration in view of the Commission's overall responsibilities under the federal securities laws. Please note, however, that it is the Commission's policy to conduct its investigations on a non-public basis in order to preserve the integrity of its investigative process. Subject to the provisions of the Freedom of Information Act, we cannot disclose to you any information which we may gather, nor can we confirm the existence or non-existence of an investigation, unless such information is made a matter of public record in proceedings brought before the Commission or the courts. Therefore, this may be the only response that you receive. If you want to learn more about how the Commission handles inquiries or complaints, please visit http://www.sec.gov/complaint/info_tipscomplaint.shtml.

## What is your complaint about?

Q: Please select the option that best describes your complaint.

A: Other

Q: Is this supplemental information to a previous complaint?

A: No

Q: In your own words, describe the conduct or situation you are complaining about.

A: The law firm Dalimonte Rueb Stoller, LLP ("DRS"), investment company Legal Recovery Associates, LLC ("LRA"), investment company Curiam Capital, LLC ("Curiam"), investment bank Stifel Financial Corp. ("Stifel"), individual Howard Berger, and individual John Spicer (a.k.a. John Ray) have committed and are involved in a conspiracy to commit securities fraud. Since 2017, they have engaged in an ongoing scheme to defraud investors and plaintiffs as part of a litigation finance enterprise ("enterprise"). LRA, Curiam, Howard Berger, and John Spicer are engaged in a wider conspiracy to commit securities fraud that involves over 100 prominent law firms and approximately 10 hedge funds. These actors are based in various states and territories of the United States, including New York, California, and the District of Columbia. They have all, at various times, used mails and wires to commit fraud in violation of, among others, section 17(a) of the Securities Act of 1933. Together, these actors employed devices, schemes, and artifices to defraud by inflating the valuation of the DRS docket. LRA, Curiam, Howard Berger, and John Spicer similarly inflated the valuation of other law firms' dockets to defraud investors. Similarly, they

engaged in transactions, practices, and courses of business which operated as a fraud or deceit on investors by exploiting their inflated valuation to obtain money or property from investors. Further, these actors obtained money or property by means of omissions to state a material fact necessary to make the statements made, considering the circumstances under which they were made, not misleading, namely omitting the extensive participation bad actors Howard Berger and John Spicer had in the offering. These actors knowingly and intentionally used an inflated valuation to obtain money or property from investors. These actors knowingly and intentionally misrepresented the valuation of their docket to investors, and knowingly and intentionally omitted the involvement Howard Berger, who they knew was permanently barred by the SEC and FINRA, and John Ray (also known as John Spicer), who they knew was convicted of felony armed robbery. Over 100 law firms have used Howard Berger, John Spicer, or both to secure dockets and financing. Many of these firms were defrauded by Howard Berger and John Spicer because they did not disclose their status as bad actors. Many other law firms knew of their backgrounds and employed Howard Berger, John Spicer, or both anyways. Utilizing bad actors to secure dockets and financing historically results in reduced awards for plaintiffs and consequently lower returns to investors. At a minimum, these risks were never disclosed. Investors subsequently relied on these material misrepresentations to their detriment. The artificially inflated docket caused investors to provide capital to Curiam to fund litigation by DRS. If they haven't already, investors likely will, suffer losses because the DRS docket cannot sustain the valuation used to raise capital. Further, investors and plaintiffs are being defrauded because of Howard Berger's and John Spicer's involvement. Once defendants are aware of Howard Berger's and John Spicer's participation, plaintiffs will suffer diminished awards, which in turn will cause investors to suffer economic losses. BACKGROUND In 2017, DRS sought financing to pursue mass tort litigation. DRS would be one of several entities involved in enterprise where cases were originated by a third party, DRS would prosecute those cases, and the prosecutions would be financed by investors who would see a return from awards of attorney's fees. LRA is a part owner of DRS. Howard Berger is listed as a consultant of LRA. His role as a consultant is fraudulent. Howard Berger manages the day-to-day operations of LRA and, as a non-lawyer, directs lawyers in the practice law. Howard Berger exercises the same authority as a Managing Member or corporate officer of LRA. Howard Berger was barred by the SEC and FINRA in 2013 for a "cherry picking" scheme. The SEC posted public notice that Howard Berger was enjoined from further securities fraud and was barred from "association with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent." See SEC Litigation Release No. 22616 of February 12, 2013 LRA filed a Form D with the SEC on May 15, 2017. LRA did not disclose Howard Berger's role in LRA. DRS, through LRA, employed Howard Berger to build their docket of cases, the asset class that would earn investors returns. Howard Berger is well known in the litigation finance industry for assembling and managing dockets. Howard Berger was placed in charge of the day-to-day operations of case acquisition for DRS. Howard Berger and LRA were in responsible for assembling DRS's docket. DRS sought an arrangement with Waterfall Asset Management ("Waterfall") in 2017 to finance their mass tort litigation. During Waterfall's due diligence, they retained an independent third-party as a valuation agent for the DRS docket that Howard Berger assembled. The valuation agent valued the docket at $242 million in total awards, and $97 million in net attorney's fees. Waterfall later learned of Howard Berger's involvement with LRA and DRS. Waterfall terminated the deal because of Howard Berger's past securities fraud. DRS then approached Curiam to secure financing. Stifel introduced DRS to Curiam and would remain involved in the enterprise. David Storrs of Stifel was assigned to manage Stifel's role in the enterprise. On June 14, 2018, representatives from Stifel, Curiam, and DRS were present at a meeting where it was revealed that Howard Berger was involved with LRA, which had a substantial financial interest in DRS, had been responsible for assembling the DRS docket, and was barred by the SEC and FINRA from performing the kind of work he performed for the enterprise. Despite learning of Howard Berger's status as a bad actor and his involvement in the enterprise, Stifel, DRS, and Curiam moved forward. As part of their due diligence, Curiam retained the services of John Ray as a valuation agent. John Ray ran Mass Tort Nexus and held himself out as a mass tort valuation expert for hedge funds and law firms. Mass Tort Nexus had dozens of prominent law firms as clients. John Ray was really John

Spicer, who was convicted of felony armed robbery and aggravated assault in Georgia in 1981 and paroled in 1987. Curiam was, at the latest, made aware of John Ray a.k.a. John Spicer's criminal history during their due diligence and prior to closing any deal with DRS. John Spicer valued the DRS docket, which Howard Berger assembled, at $400 million in total awards and $160 million in net attorney's fees, which was significantly higher than Waterfall's original valuation. DRS, Curiam, LRA, Stifel, Howard Berger, and John Spicer used this inflated valuation to secure capital and close this deal. Curiam was a new fund and, in the interest of increasing deal flow, used the inflated docket to secure more capital from high-net-worth individuals. Curiam, using the inflated docket assembled by Howard Berger, did in fact secure capital from their investors and deployed it on their behalf to DRS. DRS and their agents used the capital from Curiam to purchase additional cases, which in turn permitted Curiam to participate economically in attorney's fees. Curiam secured hundreds of millions of dollars from investors based on John Spicer's inflated valuation of Howard Berger's docket. DRS, LRA, Curiam, Stifel, Howard Berger, and John Spicer continue to prosecute the docket Howard Berger assembled and John Spicer inflated, at great risk to investors and plaintiffs. Howard Berger continues to associate with LRA and, along with Curiam, recently committed similar fraud against for the Brenes Law Group ("BLG"). BLG and LRA are currently involved in litigation which, among other things, implicates Howard Berger's ongoing securities fraud and ongoing "association with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent." At the heart of the litigation is a scheme where LRA financed other law firms with lines of credit from Curiam by leveraging the value BLG's attorney's fees without BLG's permission or knowledge. Howard Berger continues to be retained by law firms and hedge funds to build and manage dockets in the litigation finance industry. He continues to be involved in lending money to plaintiffs through an entity known as "Cash In Your Case" and continues to be involved in litigation finance offerings through LRA. John Spicer continues to take part in litigation finance offerings under the name John Ray, and recently became involved in litigation with his former partner for stealing her trade secrets, among other things. OnderLaw, LLC, Levin Papantonio Rafferty, McSweeney Langevin, Pulaski Kherker, Andruss Wagstaff, and Napoli Shkolnik, PLLC, among other law firms, utilized the services of LRA, Curiam, Howard Berger, or John Spicer to acquire dockets, value them, and secure financing. COMPLAINT DRS, LRA, Curiam, Stifel, Howard Berger, and John Spicer individually, and acting in concert, committed securities fraud and remain involved in an ongoing conspiracy to commit securities fraud. They used mail, telephones, cellular phones, electronic mail, and travelled across state lines to employ a device, artifice, or scheme, and to engage in transactions, practices, and courses of business to defraud investors, namely accounting fraud to inflate the value of DRS's docket and exploit it to raise capital from investors. Further, DRS, LRA, Curiam, Stifel, Howard Berger, and John Spicer obtained money or property through false or misleading statements to investors regarding the docket valuation and the involvement of "bad actors" in assembling and valuing the docket. Accounting Fraud to Inflate the Valuation of the Docket The inflated valuation of DRS' docket by convicted felon John Ray, a.k.a. John Spicer, constituted a device, artifice, and scheme to defraud. Using the inflated valuation to solicit funding from high-net-worth individuals also constituted an act, practice, and course of business that operated as a fraud. John Spicer inflated the value of DRS's docket to induce investment. DRS and Curiam went forward with a deal based on the valuation by convicted felon John Spicer. DRS and Curiam knew the valuation was inflated, especially given an earlier, smaller, and more reputable valuation by Waterfall. Curiam, with the full knowledge and encouragement of DRS, LRA, Stifel, Howard Berger, and John Spicer, used the inflated valuation to induce investors. Investors, relying on the inflated valuation and therefore inflated returns, provided hundreds of millions of dollars to Curiam. DRS, LRA, Curiam, and Stifel, Howard Berger, and John Spicer all knew that the valuation was inflated. They all intended for the inflated valuation to persuade investors to provide funding for their enterprise. They committed numerous overt acts, including meeting with investors, to further their fraud. Investors relied on the inflated valuation when they committed capital to Curiam. DRS, LRA, Stifel, and Curiam therefore obtained money or property, namely hundreds of millions of dollars from investors, based on the inflated docket. Because the docket cannot sustain the inflated valuation, investors are likely to experience economic loss. False or Misleading Statements to Investors

The inflated valuation also constituted untrue statements of material facts, namely the actual valuation, that DRS, LRA, Curiam, and Stifel used to obtain money or property from investors. Further, DRS, Curiam, and Stifel omitted material facts necessary to make their statements not misleading when they failed to disclose Howard Berger's involvement in assembling DRS's docket to investors and John Spicer's involvement in the valuation. DRS knew Howard Berger was barred by the SEC and FINRA. DRS deliberately failed to disclose Howard Berger's involvement to Waterfall Asset Management. DRS misrepresented to Curiam the actual work done by Howard Berger. Curiam later learned of Howard Berger's involvement and proceeded with the deal anyways. Curiam was aware of John Spicer's criminal history and used his valuation of the docket to raise capital anyways. Knowing that the involvement of bad actors would severely hamper efforts to raise capital, DRS, Curiam, Stifel, and LRA never disclosed these facts to investors. Investors relied on these omissions when investing in the enterprise. In omitting the material facts of Howard Berger's and John Spicer's involvement in the offering, DRS, LRA, and Curiam obtained hundreds of millions of dollars from high-net-worth individuals. Because the involvement of bad actors taints the docket and risks diminished awards, investors and plaintiffs are likely to experience economic loss. DRS, LRA, Curiam, and Stifel, Howard Berger, and John Spicer all knew that the enterprise utilized "bad actors" to prepare the enterprise's offerings. They knew, because of the deal that fell through with Waterfall, that disclosing the role of bad actors would severely diminish their chances of raising capital. Nevertheless, they all intended to omit the role of bad actors in preparing the offering to investors to persuade them to fund for their enterprise. They committed numerous overt acts, including meeting with investors, to further their fraud. Utilizing Known Bad Actors in violation of Rule 506 Howard Berger and John Spicer are "covered persons" and "bad actors" under Rule 506. Howard Berger is effectively a corporate officer of LRA, if not a managing member. Prior to joining LRA, Howard Berger was enjoined from violating anti-fraud provisions of the Exchange Act, Rule 10b-5, and others, and is barred from associating with any broker, dealer, investment adviser, municipal securities dealer, or transfer agent. See Securities and Exchange Commission v. Howard Brett Berger and Michelle Berger, CV-12 4728 (E.D. N.Y. September 21, 2012). LRA never disclosed Howard Berger's true role at LRA to the SEC. DRS, which is partly owned by LRA, used Howard Berger to manage the day-to-day operations of DRS's case acquisition and he was instrumental in assembling the docket. This constitutes participation in the offering. John Spicer a.k.a. John Ray is a convicted felon and served eight years in prison. He changed his name to John Ray, started Mass Tort Nexus, and holds himself out to be an expert in valuation of mass tort litigation. He was instrumental in valuing DRS's docket for Curiam, who then secured capital by misrepresenting the value of the docket to investors. This constitutes participation in the offering. DRS, Curiam, and Stifel knowingly employed and replied upon the services of bad actors in violation of Rule 506 when preparing their offerings to investors. Nevertheless, they went forward with the enterprise and failed to disclose these bad actors to investors. In the past, when defendants in mass tort cases learn that dockets have been compromised by bad actors as defined by Rule 506, plaintiffs have received diminished awards or settlements in their individual cases, through no fault of their own. These diminished awards, in turn, have resulted in lower returns and sometimes losses to investors. Plaintiffs in the DRS docket that Howard Berger assembled and manages are at risk of receiving diminished awards and are likely to receive diminished awards. Curiam's investors, in turn, are at risk of earning reduced returns and losses. Ongoing Scheme DRS, LRA, Curiam, Stifel, Howard Berger, and John Spicer continue to perpetuate their securities fraud. They continue to prosecute cases from the docket Howard Berger assembled, employing the capital Curiam obtained by defrauding investors. They pay themselves lavish salaries, fees, and benefits with the money they obtained through fraud, and hope to personally profit handsomely from the fraud, at the expense of their investors. In particular, they are able to pay themselves under the guise of "financing litigation" and "consultation fees," while promising large returns from a docket that will yield maybe half of what they promised investors. Curiam, LRA and Howard Berger, not satisfied with the fraud they committed with DRS, used it as a template to defraud not only additional investors, but additional law firms. LRA sought a relationship with BLG and offered to finance litigation for BLG. BLG entered into a promissory note with LRA. LRA then fraudulently and without BLG's permission

obtained lines of credit from Curiam based on the value of BLG's fee interest in its retained cases. LRA and Curiam then used those lines of credit to market for cases and refer or co-counsel those cases with other law firms in exchange for a portion of the legal fees. They leveraged the value of BLG's attorney's fees to obtain lines of credit for themselves when they in fact had no interest in those fees and no authority to obtain the lines of credit. LRA and Howard Berger continue to acquire and manage dockets for law firms in an effort to secure financing. John Spicer continues to value dockets for law firms in an effort to secure financing. Curiam Capital continues to secure financing for LRA and the law firms that hire LRA. They employ the same devices, schemes, and artifices to defraud as they did with DRS. This is evidenced in the BLG lawsuit. Similarly, they engage in the same transactions, practices, and courses of business which operated as a fraud or deceit on investors that they did with DRS. Not every law firm is aware of this fraud, as is the case with BLG. Others, however, are well aware of the ongoing fraudulent scheme and actively join it. BASIS I have first-hand knowledge of facts alleged in this complaint. I was present at meetings described in this complaint, was copied on correspondence describing the facts alleged in this complaint, and principals of the entities named in this complaint made admissions to me. University of Georgia Law School professor and author Elizabeth Burch obtained copies of evidence that supports the allegations in this complaint. While conducting research for a book, she independently corroborated many of the facts alleged in this complaint. Troy Brenes of BLG is a recent victim of LRA's, Howard Berger's, and Curiam's fraud. Mr. Brenes can be reached at tbrenes@breneslawgroup.com. Barbara Capasso owns Law Firm Services, LLC, which does business as Mass Tort Nexus. She is currently suing John Spicer a.k.a. John Ray and is represented by Davis Goldman, PLLC. Her lawyer can be reached at 305-800-6673. She has first hand knowledge of John Spicer's involvement in litigation finance offerings. Gregory Rueb of DRS made admissions to be that support the allegations in this complaint. He was aware and/or made inculpatory statements regarding the involvement of Howard Berger, John Spicer, and how the inflated docket was used to secure funding. He can be reached at greg@drlawllp.com. Paul L. Stoller of DRS joined the conspiracy after Curiam secured capital and has an active role in furthering it. He is aware of the involvement of Howard Berger, John Spicer, and how the inflated docket was used to secure funding. Gary Podell of is an owner of LRA and made admissions to be that support the allegations in this complaint. He was aware and/or made inculpatory statements regarding the involvement of Howard Berger, John Spicer, and how the inflated docket was used to secure funding. John A. Dalimonte of DRS had a passive role in the enterprise but was a witness to acts that support the allegations in this complaint. He was aware of the involvement of Howard Berger, John Spicer, and how the inflated docket was used to secure funding. After the death of his son, John Dalimonte had no further role in the enterprise. Greg Goldberg of LRA made admissions to be that support the allegations in this complaint. He was aware and/or made inculpatory statements regarding the involvement of Howard Berger, John Spicer, and how the inflated docket was used to secure funding. He can be reached at ggoldbert@legalrecover.com or at 1400 Old Country Rd Ste 305 Westbury, NY. Howard Berger of LRA made admissions to be that support the allegations in this complaint. Mr. Berger can be reached at howard@legalrecover.com. David Storrs of Stifel was aware of the inflated docket as well as the "bad actors" involved and continue to manage the enterprise on behalf of Stifel.

Q: Are you having or have you had difficulty getting access to your funds or securities?

A: No

Q: Did you suffer a loss?

A: No

Q: When did you become aware of the conduct? (mm/dd/yyyy)

A: 03/04/2019

Q: When did the conduct begin? (mm/dd/yyyy)

A: 02/01/2017

Q: Is the conduct ongoing?

A: Yes

Q: Has the individual or firm acknowledged the conduct?

A: Yes

Q: How did you learn about the conduct? You may select more than one answer.

A: Account statements; Broker-dealer records; Conversations; Internal business documents; SEC filings

Q: Have you taken any action regarding your complaint? You may select more than one answer.

A: Complained to firm; Legal action

Q: Provide details.

A: I brought the use of bad actors and the inflation of dockets to the attention of the principals, and was subsequently dismissed and slandered. I ultimately settled my claim for causes of action related to my termination but the principals are continuing their fraudulent schemes.

## Who are you complaining about?

Subject # 1

Q: Are you complaining about a person or a firm?

A: Person

Q: Select the title that best describes the person or firm that you are complaining about.

A: Executive officer or director

Q: Where is the person that you are complaining about employed?

A: Legal Recovery Associates

Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: No

Q: Person's Title

A: Mr

Q: First Name

A: Howard

Q: Last Name

A: Berger

Q: Email Address

A: howard@legalrecover.com

Q: Website

A: legalrecover.com

Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?

A: No

Subject # 2

Q: Are you complaining about a person or a firm?

A: Person

Q: Select the title that best describes the person or firm that you are complaining about.

A: Investment adviser representative

Q: Where is the person that you are complaining about employed?

A: Mass Tort Nexus

Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: No

Q: Person's Title

A: Mr

Q: First Name

A: John

Q: Last Name

A: Ray

Q: Website

A: https://www.masstortswithjohnray.com/

Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?

A: No

Subject # 3

Q: Are you complaining about a person or a firm?

A: Firm


Q: Select the title that best describes the person or firm that you are complaining about.

A: Private fund company (including hedge fund, private equity fund, venture capital fund or real estate fund)


Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: No


Q: Identifier Type

A: Unknown


Q: Are you a current or former Employee, Officer, Partner, or Employee Director of any entity you are complaining about?

A: No


Q: Are you a current or former Non-Employee Director, Consultant, Contractor or Trustee of any entity you are complaining about?

A: No


Q: Firm Name

A: CURIAM CAPITAL LLC


Q: Street Address

A: 767 Fifth Avenue


Q: Address (Continued)

A: 9th Floor

Q: Zip / Postal Code
A: 10153

Q: City
A: NEW YORK

Q: State / Province
A: NY

Q: Country
A: US

Q: Work Phone
A: 646-446-2990

Q: Website
A: https://www.curiam.com

Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?
A: No

Subject # 4

Q: Are you complaining about a person or a firm?
A: Firm

Q: Select the title that best describes the person or firm that you are complaining about.
A: Other

Q: For Other Firm, please specify.

A: Law Firm


Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: Yes


Q: How are you or were you associated with the person or firm you are complaining about?

A: My company had a business relationship with DRS to provide support services for their mass tort docket, which is where I gained first hand knowledge of much of the facts I allege.


Q: Identifier Type

A: Unknown


Q: Are you a current or former Employee, Officer, Partner, or Employee Director of any entity you are complaining about?

A: No


Q: Are you a current or former Non-Employee Director, Consultant, Contractor or Trustee of any entity you are complaining about?

A: No


Q: Firm Name

A: Dalimonte Rueb Stoller


Q: Street Address

A: 1250 Connecticut Avenue NW


Q: Address (Continued)

A: Suite 700

Q: Zip / Postal Code
A: 20036


Q: City
A: WASHINGTON


Q: State / Province
A: DC


Q: Country
A: US


Q: Work Phone
A: 202-883-8334


Q: Website
A: https://drlawllp.com


Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?
A: No

Subject # 5


Q: Are you complaining about a person or a firm?
A: Firm


Q: Select the title that best describes the person or firm that you are complaining about.
A: Private fund company (including hedge fund, private equity fund, venture capital fund or real estate fund)

Q: Are you or were you associated with the person or firm when the alleged conduct occurred?

A: No


Q: Identifier Type

A: CIK


Q: CIK

A: 0001707012


Q: Are you a current or former Employee, Officer, Partner, or Employee Director of any entity you are complaining about?

A: No


Q: Are you a current or former Non-Employee Director, Consultant, Contractor or Trustee of any entity you are complaining about?

A: No


Q: Firm Name

A: Legal Recovery Associates, LLC


Q: Street Address

A: 1400 Old Country Rd


Q: Zip / Postal Code

A: 11590


Q: City

A: WESTBURY

Q: State / Province
A: NY

Q: Country
A: US

Q: Work Phone
A: 516-228-8043

Q: Website
A: https://www.legalrecover.com

Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?
A: No

Subject # 6

Q: Are you complaining about a person or a firm?
A: Person

Q: Select the title that best describes the person or firm that you are complaining about.
A: Executive officer or director

Q: Where is the person that you are complaining about employed?
A: Dalimonte Rueb Stoller

Q: Are you or were you associated with the person or firm when the alleged conduct occurred?
A: Yes

Q: How are you or were you associated with the person or firm you are complaining about?

A: My company had a business relationship with Dalimonte Rueb Stoller. Greg Rueb was one of my primary contacts before my business relationship was terminated. He was one of the first people I complained to when I learned of the misconduct I allege.

Q: Person's Title

A: Mr

Q: First Name

A: Gregory

Q: Last Name

A: Rueb

Q: Email Address

A: greg@drlawllp.com

Q: Website

A: https://drlawllp.com

Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?

A: No

## Which investment products are involved?

Q: Select the type of product involved in your complaint.

A: Funds (e.g., ETFs, mutual funds, private equity funds, hedge funds)

Q: Please select the category that best describes the security product.

A: Other funds


Q: For other funds, please provide more information.

A: Litigation Finance Fund


## About you

Submitter # 1


Q: Are you filing this tip under the SEC's whistleblower program?

A: Yes


Q: Are you an attorney filling out this form on behalf of an anonymous whistleblower client who is seeking an award?

A: Yes


Q: Attorney Title

A: Mr


Q: Attorney First Name

A: Chris


Q: Attorney Last Name

A: Czaplak


Q: Attorney Firm Name

A: Precept Group, LLP

Q: Attorney Street Address
A: 8030 La Mesa Blvd

Q: Attorney Address (Continued)
A: #268

Q: Attorney Zip / Postal Code
A: 91942

Q: Attorney City
A: LA MESA

Q: Attorney State / Province
A: CA

Q: Attorney Country
A: US

Q: Attorney Work Telephone
A: 619-354-4434

Q: Attorney Email Address
A: chris@precept.co

Q: Has your client reported this matter to his or her supervisor, compliance office, whistleblower hotline, ombudsman, or any other available mechanism for reporting possible violations at any entity that he or she is complaining about?
A: Yes

Q: If you answered "Yes," please provide details.

A: My client reported this to principals at Dalimonte Rueb Stoller, specifically John Dalimonte and Gregory Rueb. My client also disclosed the involvement of bad actors to principals at Curiam Capital.

Q: Has your client been retaliated against for reporting the matter at issue in this submission either internally at the entity or to a regulator?

A: Yes

Q: If you answered "Yes," please provide details.

A: Dalimonte Rueb Stoller breached their contract and terminated their business relationship with my client for internally disclosing the ongoing fraudulent scheme and use of bad actors.

Q: Has anyone taken steps to prevent your client from reporting this violation to the SEC?

A: Yes

Q: If you answered "Yes," please provide details.

A: My client was told to sign an overly expansive non-disclosure agreement if he desired a settlement for the breach of contract claim.

Q: Are documents or other information being submitted that could potentially identify the whistleblower?

A: No

Q: Does the whistleblower want to be eligible to apply for a whistleblower award?

A: Yes

Q: 1. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer or employee of the Department of Justice; the Securities and Exchange Commission; the Comptroller of the Currency; the Board of Governors of the Federal Reserve System; the Federal Deposit Insurance Corporation; the Office of Thrift Supervision; the Public Company Accounting Oversight Board; any law enforcement organization; or any national securities exchange, registered securities association, registered clearing agency, or the Municipal Securities Rulemaking Board?

A: No

Q: 2. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority as that term is defined in Section 3(a)(52) of the Securities Exchange Act of 1934 (15 U.S.C. Section 78c(a)(52))?

A: No

Q: 3. Did you acquire the information being submitted to us through the performance of an engagement required under the federal securities laws by an independent public accountant?

A: No

Q: 4. Are you providing this information pursuant to a cooperation agreement with the SEC or another agency or organization?

A: No

Q: 5. Are you a spouse, parent, child, or sibling of a member or employee of the SEC, or do you reside in the same household as a member or employee of the SEC?

A: No

Q: 6. Have you or anyone representing you received any request, inquiry or demand that relates to the subject matter of your submission (i) from the SEC; (ii) in connection with an investigation, inspection or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or (iii) in connection with an investigation by Congress, any other authority of the federal government, or a state Attorney General or securities regulatory authority?

A: No

Q: 7. Are you currently a subject or target of a criminal investigation, or have you been convicted of a criminal violation, in connection with the information you are submitting to the SEC?

A: No

Q: 8. Did you acquire the information being provided to us from any person described in Questions 1 through 7?

A: No

Q: I certify that I have reviewed this form for completeness and accuracy and that the information contained herein is true, correct and complete to the best of my knowledge, information and belief. I further certify that I have verified the identity of the whistleblower on whose behalf this form is being submitted by viewing the whistleblower's valid, unexpired government issued Identification (e.g., driver's license, passport) and will retain an original, signed copy of the Form TCR with the declaration signed by the whistleblower, in my records. I further certify that I have obtained the whistleblower's non-waiveable consent to provide the Commission with his or her original signed Form TCR upon request in the event that the Commission requests it due to concerns that the whistleblower may have knowingly and willfully made false, fictitious, or fraudulent statements or representations, or used any false writing or document knowing that the document contains any false, fictitious or fraudulent statement or entry; and that I consent to be legally obligated to do so within 7 calendar days of receiving such a request from the Commission.

A: Agree



**Tips, Complaints, and Referrals**
Summary Page - Submitted Externally

## Documents

| Document Name | Document Type |
|---|---|
| Lexis Results for John Ray - Spicer.pdf | application/pdf |
| Brenes Law group answer and counter claims.pdf | application/pdf |
| Mass Tort Nexus Alumni.pdf | application/pdf |
| 2021.10.01 - Complaint by Capasso against John Ray.pdf | application/pdf |
| Howard Brett Berger and Michelle Berger (Release No. LR-22616;February 12, 2013).pdf | application/pdf |