RECEIVED

MAY 07 2024 mus

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| Ronald S. Lasorsa | ) | LASORSA v. BELL |
| Plaintiff, | ) | No: 5:24-CV-00031-BO-RN |
| v. | ) | |
| | ) | DEFAULT JUDGEMMENT |
| J. Edward Bell III, Esq. | ) | |
| Defendant. | ) | |

WHEREFORE, Pro Se Plaintiff is awarded the following Default Judgement:

### Preamble

This order justifies itself by the intention of the PACT ACT and CLJA legislation, which is the United States Government's desire to help those harmed by the conditions outlined in the laws.

This default judgment is awarded to a Pro Se Plaintiff who has first-hand knowledge of harmful acts being conducted in the EDNC Court's jurisdiction and has the experience necessary to cure them.

The EDNC, in recognition of this expertise, empowers the Pro Se Plaintiff in the following ways:

### Sum Certain Fees

Defendant Attorney J. Edward Bell III is ordered to pay Pro Se Plaintiff Ronald S. Lasorsa ONE MILLION DOLLARS ($1,000,000) within 30 days of this Judgement's execution.

This payment will be used to purchase security tokens in the Victory Litigation Fund 1, LP (Victory) SEC Regulation CF securities offering, with Defendant serving as the first "Investor" in Victory.

The monies will be used as described in the Victory offering documents.

Pro Se Plaintiff will subsequently pay Defendant cash distributions totaling TEN MILLION DOLLARS ($10,000,000), representing ten times the return on Defendant's first partial default judgment payment.

Defendant is ordered to assign all subsequent cash distributions to the Veterans of Foreign Wars (VFW) 501c3 non-profit as an IRS cash donation.

VFW is currently working to combat "Claim Sharks," another group preying on Veterans, and is the intended beneficiary of the "10X Impact Enhancement" described in the Victory offering documents specifically for this CLWL audit.

Defendant's 10X enhanced donation is ordered to reinforce the VFW's "Claim Shark" mission.

Defendant must pay an additional ONE HUNDRED THOUSAND DOLLARS ($100,000) within 30 days of this Judgement's execution.

This payment will pay the "Law Firm upfront fee" described in modified Victory offering documents incorporating this default judgment by reference, with the Defendant serving as Pro Se Plaintiff's first "Law Firm" client.

Pro Se Plaintiff will deploy the Default Judgment monies in the manner described in the modified Victory offering documents to replace Defendant's cases disqualified in the Special Master Audit process described below.

## Special Master – Role, Responsibilities, Compensation

Pro Se Plaintiff is appointed "Special Master" and empowered by the Court with the full authority, rights, and privileges necessary to carry out the mandate outlined in this default judgment.

This appointment will start on August 12, 2024, and end on January 1, 2029.

Special Master will conduct a forensic audit of the entire CLWL docket, consisting of both filed and unfiled claims as of 12 August 2024, to identify and disqualify all unsupportable claims.

This audit will seek to identify the lawyers, vendors, third-party litigation funders, and broker-dealers responsible for intake fraud and identity theft being conducted in the Court's jurisdiction.

Department of Justice (DOJ) is ordered to provide the following special-project funding for the Special Master audit at a cost of $5,000 per claim.

EDNC recognizes that this price reflects a fair market rate for the services required to perform the audit services described.

Special Master is granted the authority to recruit, train, and employ the workforce for this audit, exclusively from stay-at-home military spouses and unemployed and homeless veterans, to perform these services instead of using comparable civilian service providers so that veteran community members can become employed in the highly lucrative legal services industry.

DOJ is ordered to pay these funds in advance and on the first business day in the months designated, in 30,000 case increments, until the entire docket has been audited.

The first payment of six installments equals ONE HUNDRED AND FIFTY MILLION DOLLARS ($150,000,000), due in September 2024.

The audit preparation process will start upon funding, and the audit will begin in January 2025.

Five (5) additional installment payments will be made in January 2025, April 2025, July 2025, October 2025, and January 2026.

These funds, totaling SIX HUNDRED MILLION DOLLARS ($600,000,000), will be recouped by Special Master on behalf of DOJ from prosecuting identified bad actors based on the audit results and Special Master's existing Qui Tam claim.

For this audit, a "Cooperating Lawyer" is defined as a lawyer with CLWL cases in EDNC's jurisdiction who willingly provides Special Master the identities of the parties that delivered case origination services, broker-dealers who participated in their third-party funding, parties who provided valuation services for the lawyer's docket, the terms of any third-party litigation funding agreements and the projected return third-party non-litigants with a financial interest in the outcome of the case expect to receive.

A "Non-Cooperating Lawyer" is a lawyer who will not provide that information to the Special Master.

Special Master has EDNC's full authority to verify the identities of all CLWL plaintiffs by directly contacting them using the following methods: skip tracing to identify a physical home address, outbound email, and text communications, and using conversational artificial intelligence software to optimize both inbound and outbound human call-center operations.

A claim will be disqualified if a physical address can't be confirmed.

Special Master has EDNC's full authority to deploy mobile notaries to visit the physical home addresses of all claimants, notifying them of the authority of this order and physically verifying their identity by notarizing a copy of their resident state-issued identification.

All claimants will be visited a maximum of three times. After the third attempt, the claim will be disqualified.

Commencing on January 1, 2025, Special Master is authorized to initiate the retention of new claims over two years to be adjudicated separately from Defendant's PSC Leadership Committee.

Special Master is permitted to use the Veteran Administration's (VA) medical record database and medical diagnosis and treatment codes related to the injuries associated with CLWL to identify and originate verifiable new claims based on the severity of the injuries.

The total amount of VA medical benefits paid will prioritize the claims originated.

This campaign will end on December 31, 2027.

## Case Replacement Program

Cooperating Lawyers will be offered the opportunity to execute the same modified Victory Prime Brokerage Agreement as Defendant has been ordered.

Cooperating Lawyers will receive sufficient replacement cases with updated client fee agreements to offset any economic loss for every existing case disqualified due to the Special Master Audit.

For clarity, the case replacement program intends to ensure that no Cooperating Lawyer will suffer an economic loss on their current CLWL docket due to Special Master's efforts to cure the CLWL.

The current Victory offering documents define each replacement case's cost.

Special Master has the EDNC's full authority to require all third-party litigation funders that provided non-recourse loans to Cooperating Lawyers to reveal the identities of all of their investors so that Special Master may independently verify their identities using industry-standard "Know-Your-Client" and "Anti-Money Laundering" (KYC/AML) guidelines for Accredited Investors so that Special Master may determine if those investors are associated with U.S.-based organized crime or the sovereign wealth funds of American geopolitical adversaries.

Should any third-party funder refuse to provide Special Master with this information, Special Master has the EDNC's full authority to void that funder's non-recourse loans to all Cooperating Lawyers at no expense to those Cooperating Lawyers.

Non-Cooperating Lawyers will not receive case replacement services.

Non-Cooperating Lawyers will be solely responsible for the economic damages incurred by their refusal to provide the information to Special Master.

During the Special Master audit, Special Master has the EDNC's full authority to inform the clients of all Non-Cooperating Lawyers, as they are being verified during the audit, that their specific lawyer is not cooperating with the Special Master audit and that the client is authorized to choose to either remain with that Non-Cooperative lawyer with their existing attorney-client fee agreement or to retain alternative counsel in the program described in this Default Judgement.

Special Master has the EDNC's full authority to void the attorney-client fee agreements of all Non-Cooperative Lawyers whose clients voluntarily choose to transition to Special Master's alternative legal team without any financial impact to the client or quantum meruit paid to the Non-Cooperating Lawyer.

New claims will be verified using the same processes and procedures as the Special Master audit process, except that in addition to this Default Judgement Order, all potential plaintiffs will also receive a "notice of potential claim" correspondence drafted by Special Master's "Alternative Litigation Group" as described below.

## Alternative Litigation Group

Special Master has the full authority of the EDNC to select a team of attorneys from among criminal prosecutors and personal injury and medical malpractice litigators who are veterans themselves.

As Lead Counsel, Defendant is ordered to provide Alternative Litigation Group access to Defendant's work product produced and paid for with PSC Common Benefit fees from the CLWL.

Cooperating Lawyers receiving replacement cases will be subject to a 50/50 co-counsel fee split with Alternative Litigation Group and have the following Fee Caps documented in the client fee agreement:

Bellwether Bench Trials – 33% - no "common-benefits fees" deducted from the Plaintiff award.
Mass Matrix Settlement – 25% - no "common-benefits fees" deducted from the Plaintiff award.
Elective Option Claims - 20% - no "common-benefits fees" deducted from the Plaintiff award.

## Alternative Bellwether Trial Format

Special Master will select three cases for each identified injury type.

Each case will be submitted for a three-day bench trial before an EDNC Magistrate Judge.

One case will be chosen with above-average medical expenses compared to other Veterans treated with the same diagnosis who weren't stationed at Camp Lejeune. The second will have average medical expenses, and the third will have minor medical costs.

Three mass matrix settlement payment tiers (high, average, low) will be determined by the average amount of VA medical benefits paid to accurately and objectively indicate the severity of injuries based on the amount the American taxpayer spent to treat the verified diagnosis.

## VA Benefit Holdback

Special Master is authorized to raise corporate donations using a newly formed IRS 501c3 non-profit entity to offset VA Benefit holdbacks from diminishing Plaintiff awards.

Special Master has the authority to negotiate with the VA to secure reductions in the amount of holdback sought for each claim and then have unrelated third parties reduce further, or even eliminate, the entire holdback on the Plaintiff's actual award by making IRS tax-deductible donations to the designated 501c3.

The 501c3 will reimburse the VA for the negotiated holdback amount required to extinguish the Plaintiff's medical debt.

<u>Reporting and Enforcement</u>

Special Master will file a "final report" with EDNC 90 days after the audit.

The report will identify the total number of claims disqualified and the names of all Non-Cooperating Lawyers, third-party litigation funders, broker-dealers, and lead generation companies with more than 1% of their total CLWL case docket disqualified.

Special Master will file a Qui Tam claim on behalf of DOJ 60 days after the delivery of the "final report" against the parties identified as having a pattern of unsupported and disqualified claims.

The exclusive jurisdiction for this legal action will be the EDNC.

If a monetary judgment is awarded due to a successful Qui Tam litigation, DOJ will recoup the amount paid to conduct the Special Master Audit first, with the balance of the remaining financial award, if any, will be split equally (50/50) between Special Master and DOJ.

**IT IS SO ORDERED** this _____ day of _____, 2024.

_____
**The Honorable United States Magistrate Judge
Robert T. Numbers, II**