

**Asset-Backed Loan Facility**
**Indicative Term Sheet – December 15, 2017**

*Except as provided under the heading "Confidentiality", the following term sheet is a draft for discussion purposes only and is non-binding upon Waterfall Asset Management, LLC, Trident Legal Services, LLC and their respective officers, directors, employees, affiliates and subsidiaries. Any binding obligation of Waterfall Asset Management, LLC is subject to due diligence, acceptable final documentation and Investment Committee approval.*

| | |
|---|---|
| **Facility:** | Facility to fund the generation and resolution of dockets of mass tort multi-district litigation ("**MDL**") cases by Trident Legal Services, LLC ("**Trident**") through delayed draw term loans to law firms selected by Trident and approved by Lender ("**Borrowing Law Firms**"). Amounts drawn by Borrowing Law Firms under the Facility will be repaid as described herein and may not be redrawn. |
| **Facility Amount:** | Follow on financing during the term of the Administration Agreement above $25 million and up to $500 million. |
| **Lender:** | A funding vehicle managed by Waterfall Asset Management, LLC ("**WAM**") on behalf of its investment management clients. |
| **Originating Law Firm:** | A law firm formed in the District of Columbia and owned by Trident and such other investors as are approved by Lender. |
| **Advisor:** | John Dalimonte or another member of the plaintiffs' bar approved by Lender. |
| **Loans:** | Delayed draw term loans made by Lender to Borrowing Law Firms, in each case, subject to the following terms:<br><br>1. The maximum amount of permitted draws to be approved by Lender based on the Borrowing Law Firm's financial wherewithal as reflected in its most recent audited financials, subject to increase, in Lender's sole discretion, based on the aggregate MDL Case Value (as defined below) of MDL Cases generated with the proceeds of such draws;<br>2. All draws are full recourse to the Borrowing Law Firm;<br>3. All draws with respect to a particular MDL Case are due and payable (both principal and interest) on the third anniversary of the last draw the proceeds of which are applied to pay Eligible Expenses with respect to such MDL Case, regardless of the status of such MDL Case or the applicable MDL at such time;<br>4. No further draws will be permitted in the event that (i) a Loan Termination Event (as defined below) has occurred, (ii) a Trident Termination Event (as defined below) has occurred or (ii) an MDL Cease Funding Event has occurred with respect to 3 or more MDLs for which Loans to any Borrowing Law Firm are outstanding;<br>5. All draws accrue interest at a rate per annum between 15% and 21%, as agreed between the Borrowing Law Firm and Lender (the "**Coupon**");<br>6. All draws are secured by the following (collectively, "**Loan Collateral**"): (i) each of the cases naming Borrowing Law Firm as plaintiff's counsel |

1


| | |
|---|---|
| | that are generated under an MDL using Loan proceeds ("**MDL Cases**") and (ii) Borrowing Law Firm's rights in an account at a bank acceptable to Lender and subject to an account control agreement in favor of Lender (a "**Controlled Account**");<br><br>7. All draws will be made in minimum increments of $500,000;<br><br>8. A UCC filed and forwarded to each applicable MDL Administrator (as defined below);<br><br>9. Each applicable MDL Administrator is directed to pay all settlement amounts to the Controlled Account;<br><br>10. Loan proceeds may only be used to pay Eligible Expenses and are paid by Lender directly to Originating Law Firm only as incurred;<br><br>11. The Borrowing Law Firm enters into a co-counsel agreement with Originating Law Firm which entitles Originating Law Firm to a percentage of plaintiff's counsel's share of all settlement amounts paid with respect to MDL Cases (the "**Originating Law Firm Share**");<br><br>12. The Borrowing Law Firm and Originating Law Firm enter into a co-counsel agreement with a member of the plaintiffs' steering committee (the "**PSC**") to act as settlement counsel and provide related services in return for not more than 20% of plaintiff's counsel's share of all settlement amounts paid with respect to MDL Cases (the "**PSC Share**").<br><br>13. Upon of any of the following events (a "**Loan Termination Event**"), the Loan becomes immediately due and payable and Lender has the right to transfer any or all of the MDL Cases to one or more other law firms:<br><br>   a. an insolvency event occurs with respect to the Borrowing Law Firm;<br>   b. the Borrowing Law Firm fails to satisfy a financial covenant;<br>   c. the Borrowing Law Firm withdraws from, or otherwise interferes with, the Originating Law Firm's management of any MDL Case;<br>   d. the Borrowing Law Firm or any partner of the Borrowing Law Firm engages in any misconduct that is criminal or raises material reputational concerns; or<br>   e. a Trident Termination Event (as defined below) occurs.<br><br>14. Upon the occurrence of an MDL Cease Funding Event (as defined below), the aggregate amount of Loan proceeds applied to pay Eligible Expenses in order to generate MDL Cases under the applicable MDL shall become immediately due and payable.<br><br>15. all reasonable costs and expenses of Lender (including all reasonable fees and expenses of counsel) associated with entering into the related loan agreement and funding draws thereunder are reimbursed, paid or caused to be paid to Lender by the Borrowing Law Firm. |
| **Eligible Expenses:** | Only the following payments:<br><br>1. Invoiced expenses of Originating Law Firm incurred in connection with generating MDL Cases under Eligible MDLs and approved by Lender, including but not limited to the Trident Fee; and<br><br>2. A commission of 1% of each draw paid to Trident for payment to Stifel |

2


| | at the time of such draw. |
|---|---|
| **Trident Fee:** | A fee payable to Trident on a monthly basis by Originating Law Firm, allocated ratably among Borrowing Law Firms, in an amount equal to Trident's personnel and license expenses as set forth in the budget attached hereto as Schedule I (to the extent actually incurred), as such budget may be updated from time to time with Lender's approval. |
| **Eligible MDL:** | An MDL that meets the following criteria: <br><br> 1. involves injuries suffered in a mass tort; <br> 2. transferred to one or more district courts for pretrial proceedings and discovery pursuant to 28 U.S.C. § 1407 by the Judicial Panel on Multidistrict Litigation; <br> 3. at least two (2) bellwether cases have been decided in favor of the plaintiffs; <br> 4. a comprehensive settlement matrix (a **"Settlement Matrix"**) has been made publicly available or has been provided to Trident in writing by a member of the PSC; <br> 5. Trident has delivered to Lender a memo with input from Advisor addressing (a) the merits of the plaintiffs' claims, (b) the likelihood of settlement, (c) the expected settlement amount for cases generated prospectively and (d) the expected timeline for settlement and payout; <br> 6. a third-party administrator (an **"MDL Administrator"**) has been appointed by the court to manage lien resolution and qualified settlement fund disbursements; <br> 7. approved by Lender; and <br> 8. no MDL Cease Funding Event has occurred. |
| **MDL Cease Funding Event:** | The occurrence of any of the following events with respect to any MDL: <br><br> 1. the MDL is deconsolidated by the transferee court; <br> 2. two (2) or more bellwether cases are decided in favor of the defendant(s) (unless approved by Lender based on consultation with Advisor); <br> 3. the weighted average acquisition cost of MDL Cases generated under such MDL exceeds 30% of the applicable Settlement Value (as defined below); <br> 4. the aggregate amount of the proceeds of all Loans applied to pay Eligible Expenses with respect to such MDL exceeds 100% of the aggregate MDL Case Value (as defined below) of all MDL Cases generated under such MDL (but excluding, with respect to each Loan, proceeds drawn, and MDL cases generated, in each case, during the first 4 months after proceeds are first drawn under such Loan to fund Eligible Expenses with respect to such MDL); <br> 5. more than 10% of MDL Cases under such MDL are adversely decided, dismissed or remanded; or <br> 6. others, subject to completion of due diligence. |
| **MDL Case Value** | With respect to an MDL Case as of any date of determination, the product of (i) |

3


| | the applicable Settlement Value and (ii) the applicable Advance Rate (each as defined below). |
|---|---|
| **Settlement Value:** | With respect to an MDL Case as of any date of determination, the product of (i) the settlement amount to be paid to the plaintiff pursuant to the Settlement Matrix for the applicable MDL and (ii) the percentage of such amount to which plaintiff's counsel is entitled. |
| **Advance Rate:** | With respect to an MDL Case as of any date of determination: <br><br> 1. 10% with respect to an MDL Case with a retainer packet and signed HIPPA form; <br> 2. 30% with respect to an MDL Case with verified medical records; and <br> 3. 50% with respect to an MDL Case accepted by the PSC and assigned a case number. |
| **Priority of Payments:** | On the date on which a settlement or judgment is paid by the defendant with respect to an MDL Case, the MDL Administrator or Borrowing Law Firm, as applicable, distributes the settlement amount or judgment amount received for such MDL Case as follows: <br><br> 1. To Lender, the related MDL Case Loan Amount (as defined below) and accrued interest thereon at the Coupon (collectively, the **"Lender Share"**); <br> 2. To Borrowing Law Firm, Originating Law Firm and, if applicable, the relevant PSC member, *pari passu*, the Borrowing Law Firm Share (as defined below), the Originating Law Firm Share and, if applicable, the PSC Share, respectively; and <br> 3. To the plaintiff, all remaining amounts. <br><br> On the following business day, Lender pays to Stifel a commission of 2% of the MDL Case Loan Amount. <br><br> **"MDL Case Loan Amount":** With respect to each MDL Case, the aggregate amount of Loan proceeds applied to pay Eligible Expenses with respect to such MDL Case. <br><br> **"Borrowing Law Firm Share":** With respect to each MDL Case, a percentage equal to (i) plaintiff's counsel's share of any settlement or judgment minus (ii) the sum of the Lender Share, the Originating Law Firm Share and, if applicable, the PSC Share. |
| **Trident Termination Event:** | Upon the occurrence of any of the following events (each an **"Trident Termination Event"**), no further Loans will be made: <br><br> 1. Originating Law Firm or Trident breaches any representation, warranty or covenant under the Facility Documents; <br> 2. an insolvency event occurs with respect to Originating Law Firm or Trident or audited annual financial statements of Originating Law Firm or Trident are qualified for any reason; <br> 3. Trident fails to make payments in excess of $50,000 when due, including applicable grace periods, or otherwise defaults, on any |

4



|  | financing (including any leasehold obligation); |
|---|---|
|  | 4. One or more judgments are entered against, or settlements entered into by, Originating Law Firm or Trident in excess of $50,000 in the aggregate; |
|  | 5. Originating Law Firm incurs any material indebtedness or engages in any activities other than those contemplated by the Facility; |
|  | 6. An event occurs (including but not limited to a change in law or regulation or any act or omission by Originating Law Firm or Trident) that has or could reasonably be expected to have a material adverse effect on (a) the financial condition or operations of Originating Law Firm or Trident, (b) the ability of Originating Law Firm or Trident to perform any of its obligations under the Facility Documents, (c) the value, validity, collectability or enforceability of a material portion of the aggregate Loan Collateral or (d) Lender's perfected security interest in any Loan Collateral or the first priority thereof; |
|  | 7. Originating Law Firm or Trident becomes subject to any adverse action or order by a regulatory or supervisory authority; |
|  | 8. A change of control of Originating Law Firm or Trident occurs or Originating Law Firm or Trident enters into any transaction or merger in which it is not the surviving entity; |
|  | 9. Ron Lasorsa is no longer involved in the day-to-day operations of Trident or is unable to work for two consecutive months; |
|  | 10. Advisor is no longer actively advising Trident with respect to MDL opportunities and is not replaced within 30 days; and |
|  | 11. Additional events as determined by Lender following completion of due diligence. |
| **Representations, Warranties, Covenants & Indemnities:** | The Facility Documents will contain representations, warranties, affirmative and negative covenants and indemnities from Originating Law Firm, Trident and each Borrowing Law Firm customarily found in the definitive documentation of similar financings. |
| **Administration Agreement:** | Lender, Originating Law Firm and Trident will enter into an Administration Agreement setting forth the obligations of Originating Law Firm and Trident with respect to MDL Case generation and management, the terms on which Trident is entitled to expense reimbursement and compensation, specifying permitted vendors and service providers and providing for the Lender Preferred Return. |
| **Originating Law Firm Guaranty:** | Lender will have full recourse to Originating Law Firm for the Lender Share with respect to each MDL Case to the extent not received from the MDL Administrator or Borrowing Law Firm, as applicable, for the Lender Preferred Return with respect to each MDL Case and for any other losses arising from Lender's participation in the Facility. |
| **Bad Boy Guaranty:** | Lender will have full recourse to Trident and its principals in the event of (i) willful misconduct; (ii) fraud; (iii) theft or misappropriation of funds including |

5



| | |
|---|---|
| | any failure by Originating Law Firm to pay all or any portion of the Lender Preferred Return with respect to any MDL to Lender; (iv) criminal acts; (v) hindrance of Lender's security interest in any Loan Collateral; (vi) intentional acts or omissions directly resulting in any material damage or diminution in value of any Loan Collateral, (vii) unpermitted disposition of any Loan Collateral; (viii) causing or taking any action in furtherance of the voluntary filing of bankruptcy proceeding or insolvency with respect to Trident or Originating Law Firm, the consolidation of the assets of Trident or Originating Law Firm with those of any other person or the voluntary dissolution or liquidation of Trident or Originating Law Firm or (ix) failing to cooperate with Lender in connection with any exercise of Lender's rights after a Loan Termination Event and the giving of any applicable notice and the expiration of any applicable cure periods. |
| **Exclusivity:** | Lender will have the exclusive right to finance any litigation for which financing is sought by Trident or any of its affiliates during term of the Administration Agreement under the same terms specified in this term sheet, subject to a cap of $200 million. For the avoidance of doubt, in the event that Lender elects not to finance any such litigation, Trident or the applicable affiliate will be free to seek financing from another source. |
| **Right of First Refusal:** | Lender will have a right of first refusal with respect to financing any litigation for which financing sought by Trident or any of its affiliates during term of the Administration Agreement above and beyond the $200 million subject to exclusivity, subject to a cap of $500 million. If Trident or any of its affiliates receives a bona fide offer to provide any such financing from a party other than Lender during such period, Trident will provide Lender with notice thereof including a copy of such offer which includes all material terms. If Lender offers to provide such financing on substantially similar terms within fifteen (15) business days of receipt of such notice, Trident or the applicable affiliate will negotiate in good faith with Lender to consummate such financing exclusively with Lender. If (i) despite such good faith negotiations by Lender, Trident or the applicable affiliate and Lender fail to enter into such financing within 60 days or (ii) Lender does not negotiate in good faith to consummate such financing, Trident or such affiliate will have the right to obtain such financing from a third party on substantially similar terms; provided that, in the event that Trident or such affiliate intends to obtain such financing on terms more favorable to the financing provider, Lender's right of first refusal with respect thereto shall be reinstated. |
| **Reporting Requirements:** | Customary reporting requirements for transactions of this type, including but not limited to: <br><br> 1. unaudited monthly and quarterly financial statements and audited annual financial statements of Originating Law Firm and Trident; <br><br> 2. on each Reporting Date, a monthly report summarizing MDL Case activity (including all Eligible Expenses incurred, all MDL Cases generated and the resulting Borrowing Base), financial covenant compliance and other information as reasonably requested by Lender; |

6


| | |
|---|---|
| | 3. miscellaneous reporting including notice of any Loan Termination Event, MDL Cease Funding Event or Trident Termination Event; |
| | 4. additional reporting requirements as reasonably determined by Lender following completion of due diligence. |
| **Permitted Expenses:** | Trident will reimburse, pay or cause to be paid to Lender all reasonable costs and expenses of Lender (including all reasonable fees and expenses of counsel) associated with the Facility, regardless of whether it ultimately closes, including but not limited to (i) initial Due Diligence, (ii) the preparation and negotiation of Facility Documents (including templates of a loan agreement and co-counsel agreements for Borrowing Law Firms) and (iii) the administration and/or enforcement of the Facility, but excluding any expenses reimbursed or paid by Borrowing Law Firms. |
| ꞌDue Diligence: | On an ongoing basis, Lender shall have the right, directly or through one or more agents or representatives, to review Trident's operating and reporting procedures and information systems.  As part of the initial review thereof and periodically thereafter, Lender will perform comprehensive background checks on Trident's key employees, and regulatory due diligence on Trident's business practices.  Trident agrees to provide all documents and other materials, and access to all Trident personnel and/or representatives (including but not limited to external attorneys, accountants and financial advisors) during business hours, as Lender may reasonably request in connection with such reviews.  All ongoing due diligence expenses will be payable by Trident. |
| **E&O Insurance & Fidelity Bond:** | Trident will at all times maintain E&O insurance of $2.5 million. Trident will provide Lender with written evidence of policy renewal and payment of premiums no less frequently than annually. |
| | Trident will at all times maintain a fidelity bond of $2.5 million. Trident will provide Lender with written evidence of policy renewal and payment of premiums no less frequently than annually. |
| | Lender reserves the right, based upon the results of due diligence, to increase the minimum E&O insurance and fidelity bond amounts. |
| **Assignment/Participation:** | Lender shall be permitted to assign or grant participations in its rights and obligations under the Facility, or any part thereof, to (i) any affiliate of Lender without the consent of Borrowing Law Firm and (ii) any other person or entity with the consent of Borrowing Law Firm (not to be unreasonably withheld or delayed). |
| **Closing Date:** | The date requested by Trident and approved by Lender subject to satisfaction of all Conditions Precedent. |
| **Conditions Precedent:** | The conditions precedent to closing shall include, but not be limited to: |
| | 1. execution and delivery of Facility Documents satisfactory to Lender; |
| | 2. Lender has received such financing statements, opinions of counsel, insurance certificates and endorsements, and other documents as Lender may reasonably require; |

7



|  | 3. payment or reimbursement to Lender of Permitted Expenses; |
|---|---|
|  | 4. no material pending claim, investigation, action, order or proceeding against Trident; |
|  | 5. satisfactory review of such financial and other information as Lender may reasonably request, including financial projections, origination projections, cash uses and sources, operating and reporting procedures and information systems of Trident; |
|  | 6. satisfactory background investigation of principals and key employees of Trident; |
|  | 7. no material adverse change in the business, operations, or in the condition of Trident; |
|  | 8. final investment committee approval and satisfactory review of business, legal and regulatory due diligence; and |
|  | 9. additional conditions precedent as reasonably determined by Lender following completion of due diligence. |
| **Facility Documents:** | Definitive documentation of the Facility will include the Administration Agreement, the Originating Law Firm Guaranty, the Bad Boy Guaranty and, for each Loan, a loan agreement, a promissory note, a security agreement, an Originating Law Firm co-counsel agreement and a PSC co-counsel agreement along with such other documentation as is customarily found in similar financings. <br><br> All Facility Documents will be governed by New York law and all parties will submit to the non-exclusive jurisdiction and venue of the federal and state courts of the State of New York and waive any right to trial by jury. |
| **Expiration Date:** | December 22, 2017 |
| **Confidentiality:** | This term sheet is confidential and may not be disclosed to any person or entity other than Trident's officers, directors, employees and professional advisors. |
| **Exclusivity Period:** | Upon execution of this term sheet, Lender shall have 60-day exclusivity period (the "Exclusivity Period") to close the Facility during which Trident shall not seek or negotiate alternative litigation financing arrangements; provided, however, that Trident is specifically permitted to seek other alternative financing arrangements for its Subrogation and Legal Network projects. |

* * * * *

8


WATERFALL
Asset Management

This term sheet is not intended to be, and should not be construed as an attempt to establish all of the terms and conditions around which the transaction will be structured, and not to preclude negotiations within the general scope of these terms and conditions. This term sheet reflects the intentions of the parties, but for the avoidance of doubt neither this term sheet nor its acceptance will give rise to any legally binding or enforceable obligation on any party. Except as provided under the headings "Confidentiality" and "Exclusivity Period" no contract or agreement providing for any transaction involving the Facility will be deemed to exist between Trident and Lender and any of their respective affiliates unless and until a final definitive agreement has been executed and delivered. In the event of an inconsistency between this term sheet and the definitive transaction documents, the definitive transaction documents will control.

Trident Legal Services, LLC                    Waterfall Asset Management, LLC

By: _____            By: _____
Name:  Ron Lasorsa                             Name: _____
Its:   Chief Executive Officer                   Its:   Thomas Buttacavoli

Date:  12/16/2017                              Date: 12/18/17    Manager

9



Schedule I

(attached)

| Month | CEO Ron Lasorsa | Underwriter | Director of Case Management | Case Managers (Ramping up to 25) | Floor Managers (Ramping up to 2) | SF Licenses (Ramping up to 30) | Total |
|---|---|---|---|---|---|---|---|
| 1 | $10,000.00 | $10,000.00 | $5,420.00 | $0.00 | $0.00 | $75.00 | $25,495.00 |
| 2 | $10,000.00 | $10,000.00 | $5,420.00 | $0.00 | $0.00 | $75.00 | $25,495.00 |
| 3 | $10,000.00 | $10,000.00 | $5,420.00 | $0.00 | $0.00 | $75.00 | $25,495.00 |
| 4 | $10,000.00 | $10,000.00 | $5,420.00 | $10,240.00 | $0.00 | $175.00 | $35,835.00 |
| 5 | $10,000.00 | $10,000.00 | $5,420.00 | $20,480.00 | $0.00 | $275.00 | $46,175.00 |
| 6 | $10,000.00 | $10,000.00 | $5,420.00 | $30,720.00 | $3,333.34 | $400.00 | $59,873.34 |
| 7 | $10,000.00 | $10,000.00 | $5,420.00 | $40,960.00 | $3,333.34 | $500.00 | $70,213.34 |
| 8 | $10,000.00 | $10,000.00 | $5,420.00 | $51,200.00 | $3,333.34 | $600.00 | $80,553.34 |
| 9 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $3,333.34 | $725.00 | $93,478.34 |
| 10 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $3,333.34 | $725.00 | $93,478.34 |
| 11 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $3,333.34 | $725.00 | $93,478.34 |
| 12 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| Totals | $120,000.00 | $120,000.00 | $65,040.00 | $409,600.00 | $26,666.72 | $5,100.00 | $746,406.72 |
| 13 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 14 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 15 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 16 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 17 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 18 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 19 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 20 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 21 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 22 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 23 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| 24 | $10,000.00 | $10,000.00 | $5,420.00 | $64,000.00 | $6,666.68 | $750.00 | $96,836.68 |
| Totals | $120,000.00 | $120,000.00 | $65,040.00 | $768,000.00 | $80,000.16 | $9,000.00 | $1,162,040.16 |
| 24 Month Totals | $240,000.00 | $240,000.00 | $130,080.00 | $1,177,600.00 | $106,666.88 | $14,100.00 | $1,908,446.88 |

| CEO (Employee Count) | Underwriter (Employee Count) | Case Managers (Employee Count) | Director of Case Management (Employee Count) | Floor Managers (Employee Count) | Total Employee Count |
|---|---|---|---|---|---|
| 1 | 1 | 0 | 1 | 0 | 1 |
| 1 | 1 | 0 | 1 | 0 | 3 |
| 1 | 1 | 0 | 1 | 0 | 3 |
| 1 | 1 | 4 | 1 | 0 | 7 |
| 1 | 1 | 8 | 1 | 0 | 11 |
| 1 | 1 | 12 | 1 | 1 | 16 |
| 1 | 1 | 16 | 1 | 1 | 20 |
| 1 | 1 | 20 | 1 | 1 | 24 |
| 1 | 1 | 25 | 1 | 1 | 29 |
| 1 | 1 | 25 | 1 | 1 | 29 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |
| 1 | 1 | 25 | 1 | 2 | 30 |

| | |
|---|---|
| Case Manager | $2,560.00 |
| Floor Manager | $3,333.34 |
| SF Licenses | 25 |