

## Indicative Term Sheet

*Except as provided under the heading "Confidentiality", the following term sheet is a draft for discussion purposes only and is non-binding upon Waterfall Asset Management, LLC, Trident Legal Services, LLC, Dalimonte Rueb Law Group, LLP and their respective officers, directors, employees, affiliates and subsidiaries. Any binding obligation of Waterfall Asset Management, LLC is subject to due diligence, acceptable final documentation and investment committee approval.*

| | |
|---|---|
| **Facility:** | $41 million delayed draw facility (the "**Facility**") to:<br>(i) refinance an existing Line of Credit secured by the Docket (the "**Existing LOC**");<br>(ii) fund the cost of certain services to be provided by Case Manager with respect to case management and resolution of the Docket;<br>(iii) provide working capital for general operating costs; and<br>(iv) fund the cost of new case acquisition.<br><br>The amount drawn under the Facility will be repaid as described herein and may not be redrawn. |
| **Docket:** | The existing docket of cases (the "**Docket**") subject to mass tort multi-district litigation ("**MDL**") for which Borrower acts as plaintiff's counsel or co-counsel (each such case, an "**MDL Case**" and each such MDL, a "**Docket MDL**"), which Docket includes but is not limited to the following MDLs: (i) IVC Filter; (ii) MoM Hips; (iii) Hernia Mesh; (iv) Stockert 3T; (v) Taxotere; (vi) Risperdal; (vii) Talcum Powder; (vii) Pradaxa; (ix) Xarelto; and (x) Mirena PTC. |
| **Borrower:** | Dalimonte Rueb Law Group, LLP ("**Dalimonte LLP**") |
| **Lender:** | Waterfall Asset Management, LLC, on behalf of its investment management clients. |
| **Case Manager:** | Trident Legal Services, LLC. |
| **Recourse:** | All draws under the Facility are full recourse to Borrower. |
| **Loan Collateral:** | The Facility will be secured by a first priority perfected security interest in the following:<br>(i) the Docket;<br>(ii) Borrower's rights in an account at a bank acceptable to Lender and subject to an account control agreement in favor of Lender (the "**Controlled Account**");<br>(iii) all other MDL Cases acquired by or on behalf of Dalimonte LLP ("**New MDL Cases**"); and<br>(iv) all fees payable to Dalimonte LLP, including but not limited to plaintiff steering committee common benefit fees ("**PSC Fees**").<br><br>A UCC-1 will be filed against the Loan Collateral. The third-party administrator appointed by the court to manage lien resolution and qualified settlement fund disbursements with respect to each Docket MDL (an "**MDL Administrator**") will be notified of such filing and directed to pay all settlement amounts (the "**Settlement Amounts**") and all PSC Fees to the Controlled Account. |

 

| | |
|---|---|
| **Valuation Agent:** | Mark Larsen of Maxxcap Group or another valuation agent acceptable to the Lender and Borrower. |
| **Valuation & Borrowing Base:** | Prior to closing, Valuation Agent will provide a valuation of the Docket (the "**Initial Docket Valuation**") based on a scope agreed to by Case Manager and Lender and the projected settlement amount and timing of each MDL Case, discounted at a rate of 18% per annum. For the avoidance of doubt, the valuation of each MDL Case shall be based on Borrower's share of the gross award amount less the amount to be paid to co-counsel (if any).<br><br>Lender will have the right to re-value the Docket and value New MDL Cases on a quarterly basis at the expense of Borrower and at any time at its own expense. All ongoing quarterly valuation expenses will be Permitted Expenses, payable by Borrower and subject to a cap of $15,000 per quarter.<br><br>The "**Borrowing Base**" as of any date of determination will be equal to the value of the Docket and all New MDL Cases indicated in the most recent valuation performed by Valuation Agent at the direction of Lender. |
| **Borrowing Base Deficiency:** | The outstanding balance of the Facility plus any accrued and unpaid interest exceeds 35% of the most recent Borrowing Base. |
| **Maturity Date:** | The date that is the earlier of (a) the date that is 24 months from the Closing Date and (b) the date on which a Loan Termination Event occurs (the "**Term**"). On the Maturity Date, the following amounts will be due and payable by Borrower in the following order of priority:<br>(i) First, to Lender, accrued and unpaid interest on the Facility and Unused Fees (that have not been capitalized);<br>(ii) Second, to Lender, the outstanding principal balance of the Facility;<br>(iii) Third, to Lender, the Minimum Interest Amount (if applicable); and<br>(iv) Fourth, to Case Manager, the outstanding balance of the Case Manager Fee. |
| **Termination:** | The Facility may not be terminated prior to the Maturity Date. |
| **Loan Coupon** | Interest on the Facility will accrue at an annual rate of 18.00% (the "**Facility Coupon**") on the outstanding balance of the Facility and will be due and payable monthly; provided, however, that so long as 3.00% is paid currently (payment of such amount, the "**Current Interest Payment**"), Borrower may elect to PIK the remaining 15.00%. For the avoidance of doubt, capitalized amounts will be added to the outstanding principal balance of the Facility, interest will accrue on capitalized amounts and all interest (whether or not capitalized) will be due and payable on the Maturity Date. Following the occurrence of a Loan Termination Event, the Facility will accrue interest at 21% (the "**Default Loan Coupon**"). |
| **Minimum Interest Amount:** | An amount equal to the excess (if any) of (a) $8,000,000 over (b) the actual amount of interest accrued on the Facility during the Term. |

 

| | |
|---|---|
| **Upfront Fee:** | $150,000, payable at closing. |
| **Unused Fee:** | 0.50% per annum, capitalizing monthly on the difference between the average amount drawn and the average outstanding balance of the Facility during the applicable month. For the avoidance of doubt, capitalized amounts will be added to the outstanding principal balance of the Facility, interest will accrue on capitalized amounts and all Unused Fees (whether or not capitalized) will be due and payable on the Maturity Date. |
| **Use of Proceeds:** | Proceeds under the Facility may be used as follows:<br>(i) $15,000,000 will be drawn on the Closing Date to refinance and retire the Existing LOC;<br>(ii) $21,000,000 may be used to pay Eligible Expenses; and<br>(iii) $5,000,000 may be used to pay for general operational purposes or to fund the New MDL Cases.<br><br>On or about the date that is 9 months after the Closing Date, Case Manager will provide a projection of total Eligible Expenses remaining to be incurred in connection with the Docket. To the extent that the sum of Eligible Expenses incurred through such date and Eligible Expenses projected to be incurred thereafter is less than $21,000,000, the difference may be used by Borrower to fund New MDL Cases; provided that in the event that Case Manager subsequently delivers an updated projection indicating that additional Eligible Expenses are expected to be incurred in connection with the Docket, remaining amounts must be used for such purpose prior to funding any additional New MDL Cases.<br><br>Each Eligible Expense will be paid by Lender to Case Manager when such Eligible Expense has been incurred and an invoice reflecting such Eligible Expense has been submitted to Lender and approved by Borrower and Lender. |
| **Services Agreement:** | Case Manager will enter into a services agreement (the "**Services Agreement**") with Borrower which shall describe the case management and resolution services (the "**Services**") to be provided by the Case Manager on the Docket. The Services Agreement will also include the case management expense structure which shall identify the cost of the Services to be charged by Case Manager and the Case Manager Fee which will be due and payable to Case Manager by Borrower on the Maturity Date. The Services Agreement will be acknowledged and agreed to by Lender. |
| **Eligible Expenses:** | The actual cost of the Services as reflected in invoices provided to Lender and Borrower by Case Manager. |
| **Case Manager Fee:** | The sum of (i) 20% of all Eligible Expenses financed under the Facility and (ii) $35,000. For the avoidance of doubt, the Case Manager Fee will not be financed under the Facility. |
| **Loan Termination Events:** | Upon the occurrence of any of the following events (each, a "**Loan Termination Event**"), the Facility will become immediately due and payable and Lender will have the right to appoint co-counsel with respect to the Docket (for which purpose, Borrower will grant to Lender an irrevocable power of attorney): |

 

| | |
|---|---|
| | 1. Borrower fails to make the Current Interest Payment;<br>2. Borrower fails to repay the Facility, including all accrued and unpaid interest on the Facility, on the Maturity Date;<br>3. a Borrowing Base Deficiency occurs and in not cured within 2 business days following notice;<br>4. Borrower or any partner of Borrower engages in any misconduct that is criminal or raises material reputational concerns;<br>5. Borrower breaches any representation, warranty or covenant under the Facility Documents (as defined below), including but not limited failure to remit judgments received with respect to a remanded MDL Case to the Controlled Account upon receipt;<br>6. an insolvency event occurs with respect to Borrower or audited annual financial statements of Borrower are qualified for any reason;<br>7. Borrower incurs any material indebtedness or engages in any activities other than those contemplated by the Facility provided by Lender;<br>8. one or more judgments are entered against, or settlements entered into by, Case Manager in excess of $50,000 in the aggregate;<br>9. an event occurs (including but not limited to a change in law or regulation or any act or omission by Borrower) that has or could reasonably be expected to have a material adverse effect on (a) the financial condition or operations of Borrower, (b) the ability of Borrower to perform any of its obligations under the Facility Documents, (c) the value, validity, collectability or enforceability of a material portion of the Loan Collateral or (d) Lender's perfected security interest in any Loan Collateral or the first priority thereof;<br>10. Borrower becomes subject to any adverse action or order by a regulatory or supervisory authority;<br>11. a change of control of Borrower occurs or Borrower enters into any transaction or merger in which it is not the surviving entity;<br>12. a Case Manager Termination Event occurs and Borrower fails to replace Case Manager with a case manager acceptable to Lender within 60 days; or<br>13. others, subject to completion of due diligence. |
| **Case Manager Termination Event:** | Upon the occurrence of any of the following events (each, a "**Case Manager Termination Event**"), Lender will have the right to replace (or direct Borrower to replace) Case Manager:<br>1. Case Manager or any of its principals engages in any misconduct that is criminal or raises material reputational concerns;<br>2. Case Manager breaches any representation, warranty or covenant under the Facility Documents;<br>3. an insolvency event occurs with respect to Case Manager or audited annual financial statements of Case Manager are qualified for any reason;<br>4. Case Manager fails to make payments in excess of $50,000 when due, including applicable grace periods, or otherwise defaults, on any financing (including any leasehold obligation);<br>5. one or more judgments are entered against, or settlements entered into by, Case Manager in excess of $50,000 in the aggregate;<br>6. an event occurs (including but not limited to a change in law or regulation or any act or omission by Case Manager) that has or could reasonably be expected |




| | |
|---|---|
| | to have a material adverse effect on (a) the financial condition or operations of Case Manager or (b) the ability of Case Manager to perform any of its obligations under the Facility Documents;<br>7. Case Manager becomes subject to any adverse action or order by a regulatory or supervisory authority;<br>8. a change of control of Case Manager occurs or Case Manager enters into any transaction or merger in which it is not the surviving entity;<br>9. Ron Lasorsa is no longer involved in the day-to-day operations of Case Manager or is unable to work for two consecutive months; or<br>10. additional events as determined by Lender following completion of due diligence. |
| **Priority of Payments:** | On the date on which a Settlement Amount is paid by the defendant with respect to an any MDL Case, the MDL Administrator will remit the Settlement Amount and, if applicable, the PSC Fee, to the Controlled Account. On the date on which a judgment is paid by the defendant with respect to an any MDL Case, Borrower will remit plaintiff's counsel's share of such judgement ("**Judgment Amounts**"; together with "**Settlement Amounts**" and "**PSC Fees**", "**Collections**") to the Controlled Account. In either case, on the following business day, Lender will direct distribution of the Collections remitted to the Controlled Account in accordance with the following priority of payments:<br>1. First to Lender, accrued and unpaid interest on the Facility and Unused Fees (that have not been capitalized);<br>2. Second to Lender, the outstanding principal balance of the Facility;<br>3. Third, if such Business Day is on or after the Maturity Date, to Lender, the Minimum Interest Amount (if applicable);<br>4. Fourth, if such Business Day is on or after the Maturity Date, to Case Manager, the Case Management Fee; and<br>5. Fifth, to Borrower, all remaining amounts. |
| **Representations, Warranties, Covenants & Indemnities:** | The Facility Documents will contain representations, warranties, affirmative and negative covenants and indemnities from Borrower customarily found in the definitive documentation of similar financings, including but not limited to reporting covenants with respect to Docket and New MDL Case information (e.g., litigation expense budgets and actual incurrence), and negative covenants prohibiting (i) distributions to partners of Borrower during the Term and (ii) entering into any new co-counsel arrangement with respect to an MDL Case without Lender approval. |
| **Bad Boy Guaranty:** | Lender will have full recourse to Case Manager and Borrower and its partners, including Ronald Scott Lasorsa, Gary Adam Podell, Greg Goldberg, John A. Dalimonte and Gregory D. Rueb in the event of (i) willful misconduct; (ii) fraud; (iii) theft or misappropriation of funds; (iv) criminal acts; (v) hindrance of Lender's security interest in any Loan Collateral; (vi) intentional acts or omissions directly resulting in any material damage or diminution in value of any Loan Collateral, (vii) unpermitted disposition of any Loan Collateral including the transfer of any MDL Case to another law firm; (viii) causing or taking any action in furtherance of the voluntary filing of bankruptcy proceeding or insolvency with respect to Borrower, the consolidation of the assets of Borrower with those of any other person or the voluntary dissolution or liquidation of Borrower or (ix) failing to cooperate with Lender in connection with any exercise of Lender's rights after a Loan Termination |




| | |
|---|---|
| | Event and the giving of any applicable notice and the expiration of any applicable cure periods. |
| **Facility Documents:** | The definitive documentation of the Facility will include, without limitation, the Services Agreement, a loan agreement between Borrower and Lender (the "**Loan Agreement**") and a performance guaranty by Case Manager in favor of Lender. |
| **Permitted Expenses:** | All reasonable costs and expenses of Lender (including all reasonable fees and expenses of counsel) associated with evaluating the Docket, entering into the Loan Agreement and funding draws thereunder will be reimbursed, paid or caused to be paid to Lender by Borrower. |
| **Due Diligence:** | On an ongoing basis, Lender shall have the right, directly or through one or more agents or representatives, to review Borrower's financial records. As part of the initial review thereof and periodically thereafter, Lender will perform comprehensive background checks on Borrower's partners and Ron Lasorsa. Borrower agrees to provide all documents and other materials, and access to all Borrower personnel and/or representatives (including but not limited to external attorneys, consultants, accountants and financial advisors) during business hours, as Lender may reasonably request in connection with such reviews.<br><br>Prior to closing, Mass Tort Nexus will provide due diligence services with respect to specified Docket information.<br><br>All ongoing due diligence expenses will be Permitted Expenses and will be payable by Borrower. |
| **Expense Deposit** | Upon execution of the term sheet, Borrower will pay a one-time, non-refundable expense deposit of $15,000 to cover any fees associated with Valuation Agent's determination of the Initial Docket Valuation.<br><br>Upon receipt of the Initial Docket Valuation, if it is at least $145,000,000, Borrower will pay a one-time, non-refundable expense deposit of $50,000, and Case Manager will pay a one-time, non-refundable expense deposit of $35,000, in each case, to cover Permitted Expenses. Borrower will be responsible for all Permitted Expenses in excess of the Expense Deposit amounts described above. Any unused portion of the Expense Deposit will be returned to Borrower. |
| **Borrower Insurance:** | Borrower will at all times maintain professional liability insurance and a business owners policy (BOP), each of an amount to be determined by Lender after due diligence. Borrower will provide Lender with written evidence of policy renewal and payment of premiums no less frequently than annually. Lender reserves the right, based upon the results of due diligence, to increase the minimum amounts above. |
| **Assignment/Participation:** | Lender shall be permitted to assign or grant participations in its rights and obligations under the Facility, or any part thereof, to (i) any affiliate of Lender without the consent of Borrower and (ii) any other person or entity with the consent of Borrower (not to be unreasonably withheld or delayed). |




| | |
|---|---|
| **Conditions Precedent:** | The conditions precedent to closing shall include, but not be limited to:<br>1. Lender's receipt of the Upfront Fee;<br>2. An Initial Docket Valuation of at least $145,000,000;<br>3. Lender's satisfactory review of all co-counsel arrangements with respect to the Docket;<br>4. execution and delivery of Facility Documents satisfactory to Lender;<br>5. receipt by Lender of such financing statements, opinions of counsel, insurance certificates and endorsements, and other documents as Lender may reasonably require;<br>6. satisfactory repayment and release of the lien on the Docket securing the Existing LOC;<br>7. payment or reimbursement to Lender of Permitted Expenses;<br>8. no material pending claim, investigation, action, order or proceeding against Borrower;<br>9. satisfactory review of such financial and other information as Lender may reasonably request;<br>10. satisfactory background investigation of partners of Borrower;<br>11. no material adverse change in the business, operations, or in the condition of Borrower;<br>12. final investment committee approval and satisfactory review of business, legal and regulatory due diligence; and<br>13. additional conditions precedent as reasonably determined by Lender following completion of due diligence. |
| **Confidentiality:** | This term sheet is confidential and may not be disclosed to any person or entity other than Borrower's officers, directors, employees and professional advisors. |
| **Expiration Date:** | April 1, 2018 |

\* \* \* \* \*

 

This term sheet is not intended to be, and should not be construed as an attempt to establish all of the terms and conditions around which the transaction will be structured, and not to preclude negotiations within the general scope of these terms and conditions. This term sheet reflects the intentions of the parties, but for the avoidance of doubt neither this term sheet nor its acceptance will give rise to any legally binding or enforceable obligation on any party. Except as provided under the heading "Confidentiality," no contract or agreement providing for any transaction involving the Facility will be deemed to exist between Borrower, Lender, Case Manager or any of their respective affiliates unless and until a final definitive agreement has been executed and delivered. In the event of an inconsistency between this term sheet and the definitive transaction documents, the definitive transaction documents will control.

Dalimonte Rueb ~~Law~~ *Litigation* Group, LLP

By: _/s/ John Dalimonte_
Name: John Dalimonte
Title: Member/Partner
Date: 3/28/18

Trident Legal Services, LLC

By: _/s/ Ronald S. Cascarsi_
Name: Ronald S. Cascarsi
Title: CCO
Date: 3/28/18

Waterfall Asset Management, LLC

By: _/s/_
Name:
Title: Thomas Buttacavoli
Date:
Manager