# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION

| | | |
|---|---|---|
| Ronald S. Lasorsa | ) | LASORSA v. BELL |
| Plaintiff, | ) | No: 5:24-CV-00031-BO-RN |
| v. | ) | |
| | ) | FINAL JUDGMENT ORDER |
| J. Edward Bell III, Esq. | ) | |
| Defendant. | ) | |

WHEREFORE, Pro Se Plaintiff is awarded the following Final Judgement:

### Preamble

The Court's FINAL JUDGEMNT ORDER defends the intention of the United States Government to help those harmed by injuries sustained from exposure to toxic substances during military service at the American taxpayer's expense.

This Final Judgment is awarded to the Pro Se Plaintiff, who has first-hand knowledge of criminal acts being conducted in the Court's jurisdiction and has the unmatched experience and experience necessary to cure them.

The Court, in recognition of this expertise, empowers the Pro Se Plaintiff in the following ways:

### Sum Certain Fees

The Defendant, Attorney J. Edward Bell III, is ordered to pay the Pro Se Plaintiff, Ronald S. Lasorsa, ONE MILLION DOLLARS ($1,000,000) within 30 days of this Judgement's execution.

This first award will be used to purchase security tokens in the Victory Litigation Fund 1, LP (Victory) SEC Regulation CF securities offering, with the Defendant serving as an "Investor." It will be used as described in the Victory offering documents.

The Pro Se Plaintiff will then pay the Defendant cash distributions totaling TEN MILLION DOLLARS ($10,000,000) as described in the Victory offering documents.

The Defendant is ordered to assign all subsequent cash distributions resulting from this first award to the Veterans of Foreign Wars (VFW) 501c3 non-profit as a cash donation.

The VFW is currently working to combat "Claim Sharks" and is the intended beneficiary of the "10X Impact Enhancement" described in the Victory offering documents to support this mission.

The Defendant must pay a second award of ONE HUNDRED THOUSAND DOLLARS ($100,000) within 30 days of this Final Judgement's execution.

The second award will be designated a "Law Firm upfront fee," as described in the Victory offering documents.

The Pro Se Plaintiff will deploy the second award in the manner described in the Victory offering documents to replace the Defendant's cases disqualified in the Special Master Audit process described below.

## Special Master – Role, Responsibilities, Compensation

The Pro Se Plaintiff is, as a result of this appointed "Special Master," empowered by the Court with the full authority, rights, and privileges necessary to carry out the mandate outlined in this Final Judgment Order.

This appointment will start on August 12, 2024, and end on January 1, 2029.

The Special Master will conduct a forensic audit of the entire CLWL docket, consisting of both filed and unfiled claims as of 12 August 2024, to identify and disqualify all unsupportable claims.

The Special Master audit will seek to identify the lawyers, vendors, third-party litigation funders, and broker-dealers responsible for intake fraud and identity theft being conducted in the Court's jurisdiction.

The Department of Justice (DOJ) is ordered to provide the Special Master funding for the audit at a cost of FIVE THOUSAND DOLLARS ($5,000) per claim.

The Court affirms that this fee reflects a fair market rate for the services required to perform the Special Master audit process.

The Special Master is given the Court's permission to recruit, train, and employ the workforce for the Special Master audit, from stay-at-home military spouses and unemployed and homeless veterans, to perform these services instead of using comparable civilian providers so that veteran community members can become employed in the highly lucrative legal services industry.

The DOJ must pay these funds in advance on the first business day in the designated months, in THIRTY THOUSAND (30,000) case increments, until the entire CLWL docket has been audited.

The first payment of six installments is ONE HUNDRED AND FIFTY MILLION DOLLARS ($150,000,000), due in September 2024.

The Special Master audit process will begin upon funding.

Five (5) additional installment payments must be made in January 2025, April 2025, July 2025, October 2025, and January 2026.

These funds, totaling NINE HUNDRED MILLION DOLLARS ($900,000,000), will be recouped by the Special Master on behalf of the DOJ by prosecuting identified bad actors based on the Special Master's audit results and existing Qui Tam claim.

A "Cooperating Lawyer" will be defined as a lawyer with CLWL cases who willingly provides the Special Master the identities of the parties that delivered case origination services, broker-dealers who participated in their third-party funding, parties who provided valuation services for the lawyer's docket, the terms of any third-party litigation funding agreements and the projected return third-party non-litigants with a financial interest in the outcome of the case expect to receive.

A "Non-Cooperating Lawyer" will be defined as a lawyer who does not provide that information to the Special Master.

The Special Master has the Court's permission to verify the identities of all plaintiffs by directly contacting them using the following methods: skip tracing to identify a physical home address, outbound email, and text communications, and using conversational artificial intelligence software to optimize both inbound and outbound human call-center operations.

A claim will be disqualified if a physical address can't be confirmed.

The Special Master has the Court's permission to deploy mobile notaries to visit the physical home addresses of all claimants, notifying them of the authority of the Special Master's Final Judgment Order and physically verifying their identity by notarizing a copy of their resident state-issued identification.

All claimants will be visited a maximum of three times. After the third attempt, the claim will be disqualified.

Commencing on January 1, 2025, the Special Master has the Court's permission to initiate the retention of new claims over two years to be adjudicated separately from the Defendant's Leadership Committee.

The Special Master is authorized to access the Veteran Administration's (VA) medical record database using medical diagnosis and treatment codes related to the injuries associated with CLWL to identify and originate verifiable new claims based on the severity of the injuries.

The total amount of VA medical benefits paid will prioritize the claims originated.

This campaign will end on December 31, 2027.

Case Replacement Program

All Cooperating Lawyers will be offered the opportunity to execute the same agreement with the Special Master as the Defendant has been ordered.

3

Case 5:24-cv-00031-BO-RN    Document 17-3    Filed 05/15/24    Page 3 of 6

All Cooperating Lawyers will receive sufficient replacement cases with updated client fee agreements to offset any economic loss for every existing case disqualified due to the Special Master audit.

For clarity, the case replacement program intends to ensure that no Cooperating Lawyer will suffer an economic loss on their current CLWL docket due to the Special Master's mandate to cure the CLWL.

The Special Master has the Court's permission to require all third-party litigation funders that provided any loans to any Cooperating Lawyers to reveal the identities of all of their investors so that the Special Master may independently verify their identities using industry-standard "Know-Your-Client" and "Anti-Money Laundering" (KYC/AML) procedures for Accredited Investors so that the Special Master may determine if those investors are associated with U.S.-based organized crime or the sovereign wealth funds of American geopolitical adversaries.

Should any third-party funder refuse to provide the Special Master with the names of their investors, the Special Master has the Court's permission to void that funder's loans to all Cooperating Lawyers at no expense to any Cooperating Lawyers.

All Non-Cooperating Lawyers will be denied case replacement services.

All Non-Cooperating Lawyers will be solely responsible for the economic damages incurred by their refusal to provide their information to the Special Master.

During the Special Master audit, the Special Master has the Court's permission to inform the clients of all Non-Cooperating Lawyers that their specific lawyer is not cooperating with the Special Master and that the client is authorized to choose to either remain with that Non-Cooperative lawyer or to dismiss them and retain alternative representation in the program described in this Final Judgement Order.

The Special Master has the Court's permission to void all attorney-client fee agreements of all Non-Cooperative Lawyers whose clients voluntarily choose to transition to the Special Master's alternative legal team without any financial impact to the client or quantum meruit paid to the Non-Cooperating Lawyer.

New claims will be verified using the same processes and procedures as the Special Master audit process, except that in addition to this Final Judgement Order, all potential plaintiffs will also receive a "notice of potential claim" drafted by Special Master's "Alternative Litigation Group" as described below.

### Alternative Litigation Group Legal Fee Cap

The Special Master has the Court's permission to select a team of attorneys from among criminal prosecutors and personal injury and medical malpractice litigators who are veterans themselves.

4

Case 5:24-cv-00031-BO-RN     Document 17-3     Filed 05/15/24     Page 4 of 6

As Lead Counsel, the Defendant is ordered to provide this Alternative Litigation Group access to the Defendant's work product, which is paid with the PSC Common Benefit fees from the CLWL.

All Cooperating Lawyers receiving replacement cases will be subject to a 50/50 co-counsel fee split with Alternative Litigation Group law firms and have the following Attorney Fee Caps documented in their client fee agreement:

Bellwether Bench Trials – 33% - no "common-benefits fees" deducted from the Plaintiff award.
Mass Matrix Settlement – 25% - no "common-benefits fees" deducted from the Plaintiff award.
Elective Option Claims - 20% - no "common-benefits fees" deducted from the Plaintiff award.

## Alternative Bellwether Trial Format

The Special Master will select three cases for each identified injury type.

Each case will be submitted for a three-day bench trial before a Magistrate Judge.

One case will be chosen with above-average medical expenses compared to other Veterans treated with the same diagnosis who weren't stationed at Camp Lejeune. The second will have average medical expenses, and the third will have minor medical costs.

Three mass matrix settlement payment tiers (high, medium, low) will be determined by the average amount of VA medical benefits paid to objectively indicate the severity of injuries based on the amount the American taxpayer spent to treat the verified diagnosis.

## VA Benefit Holdback

The Special Master has the Court's permission to raise charitable donations using a newly formed 501c3 non-profit entity to offset VA benefit holdbacks from diminishing Plaintiff awards.

The Special Master has the Court's permission to negotiate with the VA to secure reductions in the amount of benefit holdback sought for each claim and then have unrelated third parties reduce further, or even eliminate, the entire benefit holdback on the Plaintiff's legal award by making tax-deductible cash donations to the designated 501c3.

The 501c3 will reimburse the VA for the negotiated benefit holdback amount required to extinguish the Plaintiff's medical debt.

## Reporting and Enforcement

The Special Master will file a "final report" with the Court 90 days after the audit.

5

Case 5:24-cv-00031-BO-RN   Document 17-3   Filed 05/15/24   Page 5 of 6

The report will identify the total number of claims disqualified and the names of all Non-Cooperating Lawyers, third-party litigation funders, broker-dealers, and lead generation companies with more than 1% of their total docket disqualified.

The Special Master will launch his Qui Tam claim on behalf of the DOJ 60 days after delivering the "final report" against all the parties identified as having a pattern of unsupported and disqualified claims.

The Court will have exclusive jurisdiction over the Special Master's Qui Tam claim, and all fines will be determined by jury trial.

If a monetary judgment is awarded due to successful Qui Tam litigation, the DOJ will recoup the total amount paid to conduct the Special Master Audit.

The balance of the remaining financial penalty, if any, will be split equally (50/50) between the Special Master and DOJ.

**IT IS SO ORDERED this \_\_\_\_\_ day of _____, 2024.**

_____
**The Honorable United States Magistrate Judge
Robert T. Numbers, II**

6

Case 5:24-cv-00031-BO-RN    Document 17-3    Filed 05/15/24    Page 6 of 6