# AMERICAN ARBITRATION ASSOCATION

# COMMERCIAL ARBITRATION RULES

-----------------------------------------------------------------X

DALIMONTE RUEB LITIGATION GROUP,
L.L.P. and GREGORY D. RUEB,

                Claimants,

-against-

RONALD S. LASORSA,

                Respondent.

-----------------------------------------------------------------X

Case No.

**DECLARATION OF GREGORY D. RUEB**

Gregory D. Rueb, pursuant to 28 U.S.C. § 1746, declares

    1.    I am one of the Claimants herein and an attorney admitted to practice in the State of California and in Washington D.C. I am a partner in Dalimonte Rueb Litigation Group, L.L.P. (DRLG), a District of Columbia limited liability partnership, and Dalimonte Rueb Stoller (DRS), a Massachusetts limited liability partnership. My firms represent injured persons in complex multi-district mass tort litigations and in catastrophic injury, wrongful death, and medical malpractice cases, among others.

    2.    I respectfully submit this declaration in support of Claimants' application for emergency relief, prior to the constitution of a panel, pursuant to Rule 38 of the AAA's Commercial Arbitration Rules and the March 19, 2019 settlement agreement (the "Settlement Agreement"[1]) at issue in this arbitration. The requested relief includes, but is not limited to, an interim order requiring Respondent Ronald S. Lasorsa ("Lasorsa") (a) to immediately cease his breaches of the Settlement Agreement; (b) to withdraw the bar complaints he has lodged against Rueb and other related attorneys; and (c) to cease his recent campaign of harassment,

---

[1] A true copy of the Settlement Agreement is attached as Exhibit A. The agreement to arbitrate before the American Arbitration Association under its Commercial Arbitration Rules is found in Section 8 of the agreement.

disparagement, and threats against Claimants and other parties to the Settlement Agreement. Absent this relief, my firms and I will suffer irreparable harm.

3. The subject Settlement Agreement, Release, Confidentiality, and Non Disparagement Agreement, effective March 19, 2019 (**Exhibit A**), is by and among Mr. Lasorsa, DRLG, my partner John A. Dalimonte, me, and three individuals with whom DRLG was in a joint venture, namely, Gary Podell, Howard Berger, and Greg Goldberg.[2]

4. In March 2018, working through his company, Trident Legal Services ("Trident"), Lasorsa presented a term sheet to DRLG for a $41 million credit facility with a company named Waterfall Asset Management ("Waterfall"). A true copy of the term sheet is attached as **Exhibit B**. In addition to the credit facility, the term sheet provided for Trident to be hired as the "Case Manager" and would earn fees for processing the cases funded by the facility on the back end.

5. DRLG signed the term sheet, but the transaction failed to close.

6. DRLG ended up obtaining similar financing from an affiliate of Curiam Capital LLC ("Curiam") in December 2018. Curiam was introduced to DRLG not by Mr. Lasorsa, but by Stifel, Nicolaus & Company, Inc. ("Stifel"), an investment banking firm. DRLG did not hire Mr. Lasorsa and Trident in connection with the due diligence on the financing transaction because Curiam preferred to use Mass Tort Nexus. And DRLG did not hire them as a case processor, mainly because we had been warned that Mr. Lasorsa was a difficult person to deal with.

7. DRLG had no agreement to compensate or hire Mr. Lasorsa or Trident. Nevertheless, on March 4, 2019, we received a demand letter from their attorney, Erik Walker of

---

[2] Goldberg was also a non-lawyer partner in DRLG.

2

Justinian & Associates, dated March 4, 2019 **(Exhibit C)**, threatening to sue me and my joint venture partners for tens of millions of dollars. The gist of this rambling letter was that Mr. Lasorsa claimed to be entitled to compensation "in connection with legal case management services TLS was to provide." The final section of the letter was entitled, "The Publicity." Mr. Lasorsa warned that a public dispute would reveal "involvement of felonious convicts in mass tort prosecution." To avoid the damage that this would cause, Mr. Lasorsa urged that the matter be settled privately "without filing suit."

8. Two of my joint venture partners (Gary Podell and Greg Goldberg) and I agreed to meet with Mr. Lasorsa in New York City to discuss his demand. Prior to the meeting, Mr. Lasorsa reiterated his threats. In a March 4, 2019 email **(Exhibit D)** he wrote: "In the absence of a binding agreement tomorrow, I will have no choice but to have my attorney notify both Stifel [Nicolaus & Company] (the broker) and Curiam of my intention to pursue this claim. This action will no doubt result in a myriad of unintended consequences for all of us, so, I implore you, please don't let it come to this."

9. The meeting resulted in the Settlement Agreement, under which DRLG agreed to pay Mr. Lasorsa's firm, Trident, the sum of $500,000. In exchange, we received a general release, a covenant not to sue, a promise of confidentiality, and promises of non-disparagement. These protections extended to the parties to the agreement, which included DRLG, Gary Podell, Howard Berger, Greg Goldberg, John A. Dalimonte, and me, and to DRLG's business partners, who were named as intended third party beneficiaries (and defined in the Settlement Agreement as the "DRLG Affiliates and Related Parties"). These included, relevant here, the various Curiam entities.[3]

---

[3] The full list included: Dalimonte Rueb LLP, a Massachusetts limited liability partnership, Dalimonte Rueb LLP, a California limited liability partnership, Curiam Investments 1, LLC, Curiam Investments 2, LLC, and Curiam

3

10. DRLG paid all amounts due under the Settlement Agreement.

11. Until recently, I had no material interaction with Mr. Lasorsa, except that in December 2021, another lawyer representing him, named John Benemerito, emailed a letter requesting the "commencement of formal discussions regarding [his] current lead generation efforts, upcoming plans for funding, and [to] explore ideas that are mutually of interest." I understand that he later sought financial support from Gary Podell (another signatory to the Settlement Agreement) for a "Litigation Finance Venture Entity" that involved "tokens." We declined both invitations.

12. On October 25, 2022, Mr. Lasorsa's new counsel, Chris Czaplak, sent a "Notice of Breach and Request to Cure" to our counsel, Andrew T. Solomon of Solomon & Cramer LLP (**Exhibit E**). Without foundation, the letter alleged (a) that the DRLG Affiliates and Related Parties had breached the non-disparagement provisions of the Settlement Agreement, (b) as a result, Mr. Lasorsa had suffered "<u>at least</u> $14 million" in damages, and (c) that Trident was now excused "from performance with respect to their [sic] ongoing obligations under the Agreement, specifically but not limited to paragraph 10 [the non-disparagement clause]." As in the 2019 episode, counsel gave away the true purpose of the letter by stating that Mr. Lasorsa would refrain from disparaging any party to the Settlement Agreement while he waited for us to "propose a good faith cure for the breach, which must include, at a minimum, compensation …."

13. I had no information about the breach alleged by Mr. Lasorsa and I nor any other

---

Investments 3, LLC (all three Delaware limited liability company), Curiam Capital LLC, a Delaware Limited Liability Company, Cash In Your Case LLC, a New York limited liability company, CIYC II, a Delaware limited liability company, Legal Recovery Associates LLC, a New York limited liability company, LRA SPV, LLC, a Delaware limited liability company, Mass Tort Nexus and its principal, John Ray and Barbara Capasso, and any law firm joint venture partner involved with Cash In Your Case LLC, CIYC II, Legal Recovery Associates LLC (including McSweeney Langevin DC, LLP, a D.C. limited liability partnership, and McSweeney/Langevin LL, a Minnesota limited liability partnership), and any trust created by or for the benefit of Howard Berger, Greg Goldberg, Gary Podell and their family members.

4

of the parties to my knowledge have done anything to violate the agreement. On October 26, 2022, Solomon & Cramer LLP wrote to Mr. Czaplak asking for specifics and correcting his interpretation of the Settlement Agreement (**Exhibit F**). We have never received a response.

14. On Sunday, November 20, 2022, Mr. Lasorsa emailed to me four bar complaints that he had filed: one to California (**Exhibit G**), one to Arizona (against my partner Paul Stoller) (**Exhibit H**), one to New York (**Exhibit I**), and one to the District of Columbia (**Exhibit J**).

15. To the Arizona bar, Mr. Lasorsa alleged that we had committed "Securities fraud and legal malpractice." He also provided the following description of his claim to the Arizona and D.C. Bars:

> As a matter of conscience and against the advice of counsel, I am intentionally violating a non-disclosure agreement that carries a minimum liquidated damages provision of $500,000 by submitting this bar complaint. I am taking this extraordinary measure to prevent an imminent but avoidable travesty of justice about to be perpetrated against the American taxpayer and the Veteran Community in the Camp Lejeune water contamination litigation. Based on my military pedigree, career on Wall Street, and verifiable track record in mass tort litigation finance, my experience and expertise on this matter are unmatched. I am uniquely qualified to do something about this, so I must, despite the risk to my financial well-being. On Nov 17th, I will host a webinar on my new personal blog www.watchmepickafight.com. At that time, I will publicly identify Dalimonte Rueb and Stoller as a law firm actively violating securities law to defraud investors and performing legal malpractice against their clients based on my documents. I intend to make these charges public to the Veteran community because I have a moral obligation to ensure that this misconduct does not affect them. Unfortunately, the DC and AZ Bar are incentivized to minimize the investigation into this matter no matter how egregious the lawyer's offenses are, given how poorly it reflects on the entire mass tort process, specific law firm, and individual lawyers in question. I intend to highlight their mischief and then rely on the legal and regulatory process to show veterans that they need to be very discerning about their legal representation. I refuse to allow lawyers to cover up for lawyers at the expense of their clients any longer. Veterans will know who to trust. The documents can be found at this Dropbox link -

5

https://www.dropbox.cornisclfio/qgeskdkkreecyds6970pt/h?d1=0&rIkey=cguooh622f74dqsdogb58futu

**Exhibit H & J**.

16. In his complaint to the New York bar, Lasorsa wrote:

    To Whom It May Concern:

    As a matter of conscience end against the advice of counsel, I am intentionally violating a non-disclosure agreement that carries a minimum liquidated damages provision of $500,000 by submitting this bar complaint.

    I am taking this extraordinary measure to prevent an imminent but avoidable travesty of justice about to be perpetrated against the American taxpayer and the Veteran Community in the Camp Lejeune water contamination litigation.

    Based on my military pedigree, career on Wal Street, and verifiable track record in mass tort litigation finance, my experience and expertise are unmatched.

    I am uniquely qualified to do something about this, so I must, despite the risk to my financial well-being.

    As a result, I will publicly identify the following individuals for illegal and unethical activities.

    Attorney Justin Brass (NY Bar #4248530) employed at Stifel Institutional Group, 787 7th Avenue, 11th Floor, NY, NY 10019, telephone # 212-887-7777.

    Attorney J. Ross Wallin (NY Bar #3064375) employed at Curium Capital LLC, 767 Fifth Avenue, 9th Floor, NT NY 10153, telephone # 646-446-2992

    Attorney Greg Rueb (CA BAR #154589) of Dalimonte Rueb and Stoller 1990 N. California Blvd., 8th Floor, Walnut Creek, CA 94596, telephone # 833-443-7529

    I intend to make these charges public to the Veteran community because I have a moral obligation to ensure that this misconduct does not affect them.

    Unfortunately, I have reported this to multiple bar associations with zero response. After all, lawyers are incentivized to minimize

> consumer complaints no matter how egregious the lawyer's offenses are because lawyers protect lawyers.
>
> I intend to highlight this mischief and then rely on the legal and regulatory process to show veterans that they need to be very discerning about their legal representation.
>
> I refuse to allow lawyers to cover up for lawyers at the expense of veterans, and Veterans will know who to trust.
>
> Authorities can find may documents at this Dropbox link - https://www.dropbox.cornisciffolqgeskdkkreecyds6970pt/hTdO&rikey=cguooh622174dqsdogb58futo

**Exhibit I.**

17. To the DC Bar complaint (**Exhibit J**), Lasorsa attached the March 4, 2019 letter that we had received from Justinian Associates (which led to the Settlement Agreement), the Settlement Agreement itself, and an October 20, 2022 "Client Advice Letter," marked "Attorney-Client Privilege," which Mr. Lasorsa had obtained from his most-recent attorney, Mr. Czaplak. The letter contains the opinion and analysis of Mr. Czaplak (a California lawyer) of New York law and New York's Disciplinary Rules and his interpretation of the Settlement Agreement (also governed by New York law). Though the opinion letter is full of errors, it correctly concludes that Mr. Lasorsa should not file any bar complaints against parties to the Settlement Agreement because such action would violate his contractual commitment. The attorney also says that he would not assist Mr. Lasorsa in the "commission of an illegal act of fraud."

18. Mr. Lasorsa ignored his attorney's advice and filed the bar complaints anyway.

19. Meanwhile Mr. Lasorsa began openly threatening my firm's lender and broker, namely Ross Wallin (of Curiam) and Justin Brass (of Stifel). He sent Mr. Wallin and me emails on November 21, 2022 that attached the stock price of Stifel's stock, warning that he could "either drive the price down with negative press or increase the value with positive press," that

7

Case 5:24-cv-00031-BO-RN   Document 18-2   Filed 05/28/24   Page 7 of 10

there was "no greater advocate, no worse adversary" than he, that he was "not going anywhere," and that it was "time to talk about this." (**Exhibit K**).

20. A second email on November 21, 2022 (**Exhibit L**) contained a fairly grisly threat – "It should be no surprise to either of you, that I intend *to flay you both alive* as examples of scumbag lawyers in my marketing efforts to veterans" – followed by a transparent shakedown:

> You are all in a world of shit and at least one of your two criminal co-conspirators is going back to jail. That is a fact but is so unfortunate and unnecessary.
>
> Please don't be short sighted; I can fix this for everyone. I suggest you have someone reach out to me and schedule a call very soon so I can tell you how.

21. The next day, Mr. Lasorsa sent to me and Mr. Wallin an email that contained a video link about whistleblowing and warned: "I beg you to please consider your personal liability if you continue to deny responsibility. I will never stop coming for you both. EVER. This is very personal for me. I promise you that neither of you is prepared for the level of intensity I intend to bring to the fight." (**Exhibit M**)

22. Mr. Lasorsa continued his pattern of menace and extortion in a November 22, 2022 email to Mr. Wallin and me, in which he referred again to the whistleblower video and threatened: "We are coming for you both. Unless you do the right thing." **Exhibit N**.

23. And a third November 22, 2022 email (**Exhibit O**) included further threats against Stifel's stock price and more promises to destroy us:

> I'm going to make 15% of all the fines on all the law firms and hedge funds that Stifel did business through my qui tam claim. You guys are so fucked… Thank you for making this so easy.
>
> Unless of course you want to talk about solving all of this in mediation. The choice is yours.
>
> I do intend to earn the title, "No Greater Advocate, No Worse Adversary," and you two knuckleheads are right out of central

8

casting as stereotypical greedy lawyers… so my marketing plan is just starting to run itself. I haven't even started fucking with either of you yet and Veterans are going to love the show.

24. On November 23, 2022, Mr. Lasorsa sent another threatening email but this time not just to me and Mr. Wallin, but also to my partners, his own lawyer (Mr. Czaplak), and people with emails at "RoweCapitalGroup.com" and "NSS-X.com". (**Exhibit P**). The email's subject line reads: "Three stooges of litigation finance have handed the SEC what they have been looking for". The text identifies Mr. Wallin, Mr. Brass, and me as the "three idiots" and then threatens Mr. Wallin with an SEC investigation and my bar license in California and the District of Columbia.

25. In 2019, when we settled with Mr. Lasorsa, I believed his threats were at the level of extortion, but I had hoped that by paying him and locking him into a well-drafted settlement agreement future misconduct could be avoided. I was wrong. Mr. Lasorsa has returned for another round, with escalating threats, increasingly wild factual allegations, and even greater intensity. As before, his allegations are untrue. But lies can cause enormous reputational damage.

26. The purpose of the Settlement Agreement was to prevent Mr. Lasorsa from disparaging my law firm and business partners. Mr. Lasorsa acknowledged this in paragraph 10 of the Settlement Agreement, which states in capital letters:

> THE TRIDENT PARTIES ACKNOWLEDGE AND AGREE THAT BY ACCEPTING THE PAYMENTS THEY WILL REMAIN ABSOLUTELY SILENT, PUBLICLY AND PRIVATELY, ABOUT ANY AND ALL ASPECTS OF THE DRLG AFFILIATES AND RELATED PARTIES.

27. In paragraph 14 of the Settlement Agreement, Mr. Lasorsa further acknowledged that the "DRLG Affiliates and Related Parties would be irreparably damaged if the Trident Parties breach their confidentiality and non-disparagement obligations" and that the DRLG

9

Affiliates and Related Parties are "entitled to file a court action for appropriate equitable relief, including an injunction and/or temporary restraining order, without any bond or security, if the Trident Parties breach or threaten to breach all or any of these obligations."

28. As stated above, Mr. Lasorsa has breached and has threatened to continue to breach the non-disparagement provisions of the Settlement Agreement. In doing so, he has harmed and threatens to further harm the professional and business reputation of me, my law firm, and my business partners. The harm is ongoing and can only be dissipated through immediate interim relief in which Lasorsa is ordered to comply with his non-disparagement and confidentiality obligations and withdraw the bar complaints.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2022.

_____
Gregory D. Rueb