## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

Ronald S. Lasorsa
    Pro Se Plaintiff

v.

J. Edward Bell III, Esq.
    Defendant.

LASORSA v. BELL
No: 5:24-CV-00031-BO-RN

FINAL JUDGMENT ORDER

WHEREFORE, the Pro Se Plaintiff is awarded the following Final Judgement:

### Preamble

This FINAL JUDGMENT ORDER finds that the Defendant was negligent when performing his duties as Lead Counsel in the Camp Lejeune Water Litigation (CLWL) and has unintentionally allowed intake fraud and identity theft to occur in the Court's jurisdiction.

The Pro Se Plaintiff has first-hand knowledge of these acts and the unmatched experience and expertise to cure the issues currently facing the Court.

The Court, in recognition of this expertise, empowers the Pro Se Plaintiff in the following ways:

### Special Master – Role, Responsibilities, Compensation

The Pro Se Plaintiff is appointed "Special Master" and immediately relieves the Defendant of his leadership position as Lead Counsel of the Plaintiff Steering Committee.

The court empowers the Special Master with the full authority, rights, and privileges necessary to carry out the mandate outlined in this Final Judgment Order.

The Special Master now promotes Attorney Mona Lisa Wallace of the Wallace & Graham law firm to Lead Counsel so that she may assume leadership of the current Plaintiff Steering Committee.

Attorney Wallace will report directly to the Special Master, and all other Plaintiff Steering Committee members will report directly to Attorney Wallace.

The Special Master will coordinate with the Lead Counsel to conduct a forensic audit of the entire CLWL docket, consisting of both filed and unfiled claims as of 12 August 2024, to identify and disqualify all unsupportable claims.

The Special Master audit will seek to identify the lawyers and their co-counsel partners, vendors, third-party litigation funders, and broker-dealers responsible for intake fraud and identity theft perpetrated in the Court's jurisdiction.

A "Cooperating Lawyer" will be defined as a lawyer with CLWL cases who willingly provides the Special Master the identities of all co-counsel law firms, the parties that delivered case origination services, all broker-dealers who participated in their third-party funding, all parties who provided valuation services for the lawyer's docket, the terms of any third-party litigation funding agreements and the projected return all third-party non-litigants with a financial interest in the outcome of the case expect to receive.

All Lawyers serving on the Plaintiff Steering Committee must be Cooperating Lawyers.

The Special Master will consult with the Lead Counsel and the Court to replace those Plaintiff Steering Committee members who refuse, and those lawyers will be designated as "Non-Cooperating Lawyers."

A "Non-Cooperating Lawyer" will be defined as a lawyer who refuses to provide that information to the Court.

The Defendant is designated as a Non-Cooperating Lawyer.

The Special Master is given the Court's permission to recruit, train, and employ the workforce for the Special Master audit, from stay-at-home military spouses and unemployed veterans, to perform these services instead of using comparable civilian legal services vendors so that veteran community members can become employed in the highly lucrative legal services industry.

The Special Master has the Court's permission to verify the identities of all plaintiffs by directly contacting them using the following methods: skip tracing to identify a physical home address, using outbound email and text communications, and conversational artificial intelligence technology to optimize both inbound and outbound human call-center operations.

A claim will be disqualified if a plaintiff's physical address isn't confirmed.

The Special Master has the Court's permission to deploy mobile notaries to visit the physical home addresses of all plaintiffs, notifying them of the authority of the Special Master's Final Judgment Order and physically verifying their identity by notarizing a copy of two forms of their Government-issued identification.

All plaintiffs will be visited a maximum of three times. After the third attempt, the claim will be disqualified.

Any plaintiff who can't produce two forms of original government-issued identification or refuses to produce those documents will have their claim disqualified.

2

All existing client fee agreements for all validated claims will be deemed unenforceable, and new client fee agreements will be resigned with the following updated legal fee caps:

Bellwether Bench Trials – 33% - with ZERO additional fees deducted from any Plaintiff award.
Mass Matrix Settlement – 25% - with ZERO additional fees deducted from any Plaintiff award.
Elective Option Claims - 20% - with ZERO additional fees deducted from any Plaintiff award.

The Special Master has the Court's permission to require all third-party litigation funders that provided any loans to any Cooperating Lawyers to reveal the identities of all of their investors so that the Special Master may independently verify their identities using industry-standard "Know-Your-Client" and "Anti-Money Laundering" (KYC/AML) procedures for Accredited Investors so that the Special Master may determine if those individual investors are associated with U.S.-based organized crime or the sovereign wealth funds of American geopolitical adversaries.

Should any third-party funder refuse to provide the Special Master with all their investors' names, the Special Master has the Court's permission to designate all of that funder's loans as "unenforceable" and with no recourse to any Cooperating Lawyers.

All Non-Cooperating Lawyers will be denied case replacement services, and all of their clients with validated claims will sign a new client fee agreement with the above-referenced legal fee caps with the Lead Counsel.

All Non-Cooperating Lawyers will be solely responsible for the economic damages incurred by their refusal to provide their information to the Special Master.

### Sum Certain Fee Award

The United States Government (USG) is ordered to provide the Special Master funding for the audit for a sum certain fee of FIVE THOUSAND DOLLARS ($5,000) per claim.

The USG must pay these funds in advance on the first business day in the designated months, in THIRTY THOUSAND (30,000) case increments, until the entire CLWL docket has been audited.

The first payment of six installments is ONE HUNDRED AND FIFTY MILLION DOLLARS ($150,000,000), due on the first business day of September 2024.

The Special Master audit process will begin immediately upon funding.

The USG must make five (5) additional installments in January 2025, April 2025, July 2025, October 2025, and January 2026.

These funds, totaling NINE HUNDRED MILLION DOLLARS ($900,000,000), will be recouped by the Special Master on behalf of the USG by prosecuting identified bad actors based on the Special Master's audit results and the Special Master's existing Qui Tam claim filed on October 7, 2022.

## Case Replacement Program

The Special Master has the Court's permission to exclusively recruit, hire, train, and deploy Veterans and their family members to perform these audit and case replacement services so that they may receive the economic benefits that would have otherwise gone to existing vendors in the highly lucrative legal services industry.

All Cooperating Lawyers will be offered the opportunity to execute the Prime Brokerage Agreement that is part of the Victory Litigation Fund SEC Reg CF securities offering documents.

All Cooperating Lawyers will receive sufficient replacement cases with updated client fee agreements to offset any economic loss for every existing case disqualified due to the Special Master audit.

For clarity, the case replacement program intends to ensure that no Cooperating Lawyer will suffer an economic loss on their current CLWL docket due to the Special Master's Order to cure the CLWL.

Commencing on January 1, 2025, the Special Master has the Court's permission to initiate the retention of new claims over two years to be adjudicated separately from the Defendant's Leadership Committee.

This extension includes all claims that may qualify under the "Navy Elective Option" described in the "Public Guidance on Elective Option for Camp Lejeune Justice Act claims," issued on September 6, 2023, and updated on September 15, 2023.

The Special Master is authorized to access the Veteran Administration's (VA) medical record database by using medical diagnosis and treatment codes related to the injuries associated with CLWL to identify and originate verifiable new claims based on the severity of the injuries.

All new claim origination will be prioritized based on the total VA medical benefits paid to diagnose and treat the alleged injuries sustained during the plaintiff's verifiable presence at Camp Lejeune.

This replacement case campaign will end on December 31, 2027.

All new claims will be verified using the same processes and procedures as the Special Master audit process, except that in addition to this Order, all potential plaintiffs will also receive a "notice of potential claim" drafted by the Lead Counsel of the Plaintiff Steering Committee.

## New Bellwether Trial Format

All Bellwether trials are suspended until January 2026.

Under the new format, the Special Master will select three cases for each identified injury type.

Each case will be submitted for a three-day bench trial before a Magistrate Judge.

One case will be chosen with above-average medical expenses compared to other Veterans treated with the same diagnosis who weren't stationed at Camp Lejeune. The second will have average medical expenses, and the third will have minor medical costs.

Three mass matrix settlement payment tiers (high, medium, low) will be determined by the average amount of VA medical benefits paid to objectively indicate the severity of injuries based on the amount the American taxpayer spent to treat a diagnosed injury.

## VA Benefit Holdback

The Special Master has the Court's permission to raise charitable donations using a newly formed 501c3 non-profit entity to offset VA benefit holdbacks from diminishing Plaintiff awards.

The Special Master has the Court's permission to negotiate with the VA to secure reductions in the total amount of any benefit holdback sought for each claim and then may seek to have unrelated third parties reduce further, or even eliminate, the entire benefit holdback on that Plaintiff's legal award by making tax-deductible cash donations to the designated 501c3.

The 501c3 will reimburse the VA for the negotiated benefit holdback amount required to extinguish the Plaintiff's medical debt.

## Reporting and Enforcement

The Special Master will file a "Final Report" with the Court no more than 90 days after the audit.

The report will identify the total number of claims disqualified and the names of all Non-Cooperating Lawyers, third-party litigation funders, broker-dealers, and lead generation companies with more than 1% of their total docket disqualified.

The Special Master will litigate his Qui Tam claim on behalf of the DOJ 60 days after delivering the "final report" against all the parties identified as having a pattern of unsupported and disqualified claims.

The Court will have exclusive jurisdiction over the Special Master's Qui Tam claim, and all fines will be determined by jury trial.

If a monetary judgment is awarded due to successful Qui Tam litigation, the USG will recoup the total amount paid to conduct the Special Master Audit.

The balance of the remaining financial penalty, if any, will be split equally (50/50) between the Special Master and the USG.

**IT IS SO ORDERED this \_\_\_\_\_ day of _____, 2024.**

_____
**The Honorable United States Magistrate Judge
Robert T. Numbers, II**