IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-31-BO

| | | |
|---|---|---|
| RONALD S. LASORSA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| J. EDWARD BELL III, ESQ., | ) | |
| Defendant. | ) | |

This cause comes before the Court on plaintiff Ronald S. Lasorsa's motion for an entry of default, [DE 9], and defendant J. Edward Bell III's motion to dismiss plaintiff's complaint, [DE 5]. The appropriate responses and replies have been filed, or the time for doing so has expired. In this posture, the matters are ripe for ruling. For the reasons that follow, plaintiff's motion for entry of default is denied, [DE 9], and defendant's motion to dismiss is granted, [DE 5].

BACKGROUND

In August 2022, Congress enacted, and President Biden signed, the CLJA as part of the larger Honoring our PACT Act of 2022 ("PACT Act"). *See* Pub. L. No. 117-168, § 804, 136 Stat. 1759, 1802–04. The CLJA, which became effective on August 10, 2022, created a new federal cause of action permitting "appropriate relief for harm that was caused by exposure to the water at Camp Lejeune" for individuals who resided, worked, or were otherwise exposed for not less than 30 days during the period between August 1, 1953, and December 31, 1987. *See id.* § 804(b). Within the CLJA, Congress established the burden of proof, afforded the United States District Court for the Eastern District of North Carolina with "exclusive jurisdiction" and "exclusive venue," and provided for jury trials for this new federal cause of action. *See id.* §§ 804(c)–(d).

In anticipation of the voluminous litigation that would stem from the new cause of action laid out within the CLJA, the Eastern District of North Carolina directed the Clerk of the Court to create and maintain a Master Docket. [DE 1].[1] The Master Docket contains important forms and instructions pertaining to CLJA claims, along with various procedural rules, or "Case Management Orders" ("CMO"), that promote expeditious and orderly consideration of the CLJA claims. [DE 1]. Critical to the case at bar is the July 19, 2023 CMO. [DE 10]. In that order, the Eastern District of North Carolina appointed the defendant, Mr. Bell – who lobbied Congress to pass the CLJA – as Lead Counsel, six other attorneys as Co-Lead Counsel, two liaison counsel and one attorney a member of the Resolution Committee. [DE 10]. Through this CMO, the Court also assigned various duties to Mr. Bell in his capacity as Lead Counsel. [DE 10]. These duties included, *inter alia*, "[c]all[ing] meetings," "serv[ing] as spokespersons," handling "any oral or written motions," and completing "meet and confers with the United States." [DE 10]. Critically, however, the CMO did not assign Mr. Bell with the responsibility to handle "matters specifically directed to individual plaintiffs and their counsel." [DE 10].

Plaintiff Ronald S. Lasorsa is a United States Marine Corps Veteran who served as an Infantry Officer. [DE 1]. Plaintiff was stationed at Camp Lejeune in 1990 and resided there with his family through 1994. [DE 1]. Plaintiff contends that during his station at Camp Lejeune, he and his family were "personally exposed to the contaminated water." [DE 1].

On January 18, 2024, plaintiff filed the instant complaint against defendant. [DE 1]. In his complaint, plaintiff alleges two causes of action against defendant: (1) negligence, and (2) a violation of due process. [DE 1]. Defendant responded with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that plaintiff failed to state a claim upon

---

[1] Any reference to "Master Docket" or "CMO" relates to the matter *In re: Camp Lejeune Water Litigation v. United States of America*, No. 7:23-CV-897-RJ.

which relief can be granted. [DE 5]. In response, plaintiff sought a motion for entry of default. [DE 9]. For the reasons discussed herein, the Court will deny plaintiff's motion for entry of default, and grant defendant's motion to dismiss.

## DISCUSSION

I. Plaintiff's Motion for Entry of Default.

Before the Court may entertain a motion for entry of default, it must first determine whether plaintiff established that he properly served defendant with the summons and complaint. *See Joe Hand Promotions, Inc. v. GFL United LLC*, 645 F.Supp.3d 530, 534 (2022); *see also* Fed. R. Civ. P. R. 55. Importantly, "[t]he burden of proving service . . . rests with the plaintiff[]." *See Joe Hand Promotions, Inc.*, 645 F.Supp.3d at 535 (citations omitted). The Federal Rules of Civil Procedure require that any summons be "directed to the defendant." Fed. R. Civ. P. 4(a)(1)(B). Under Rule 4, service may be effected by delivering the summons "to the person individually," leaving a copy at the person's home, or delivering a copy to "an authorized agent." Fed. R. Civ. P. 4(e)(2). Individuals also may be served according to the law of the state in which service is made, or in which the court is located. *See* Fed. R Civ. P.4(e)(1). Thus, because plaintiff filed the instant matter in North Carolina and sought to serve the defendant in South Carolina, plaintiff had the choice to serve defendant in accordance with Federal, North Carolina, or South Carolina Rules of Civil Procedure.

In the instant case, the Court concludes that plaintiff has not satisfied his burden of demonstrating that he properly served defendant in accordance with the Federal, North Carolina, or South Carolina rules governing service of process. *See* Fed. R. Civ. P. R. 4(h)(1)(A)-(B); N.C. Gen. Stat. § 1A-4, Rule 4(j)(1)(a)-(e); S.C. R. Civ. P. R. 4(a)-(j). *See also Joe Hand Promotions, Inc.*, 645 F.Supp.3d at 534-35. Plaintiff alleges that he served defendant by leaving process with

Morgan Derrick, a legal assistant at defendant's office. [DE 10]. However, plaintiff has not identified Derrick as an authorized agent for service of process on defendant, nor has plaintiff cited to any evidence that Derrick in fact relayed the service to defendant. [DE 1, 4, 9]. Furthermore, the Federal, North Carolina, and South Carolina Rules of Civil Procedure do not authorize individuals to accept service on behalf of their coworkers or colleagues. *See* Fed. R. Civ. P. 4(e); N.C. Gen. Stat. § 1A-4, Rule 4(j)(1); S.C. R. Civ. P. R. 4(d)(1). Accordingly, the Court finds that plaintiff has failed to properly serve defendant. *See Joe Hand Promotions, Inc.*, 645 F.Supp.3d at 536 (finding that plaintiff failed to properly serve the defendant where "[t]here is no proof that" the individual who signed for the delivery "was an appropriate person . . . to accept service of process"). As a result, the Court denies plaintiff's motion for entry of default against defendant. [DE 9]. *See Norfolk S. Ry. Co. v. Old Stage Partners, LLC*, No. 5:07-CV-457-F, 2008 WL 5220219, at *3 (E.D.N.C. Dec. 12, 2008) (refusing to enter default judgment because of questions concerning service).

II. Defendant's Rule 12(b)(6) Motion to Dismiss.

A Rule 12(b)(6) motion to dismiss focuses on the pleading requirements under the Federal Rules. "Rule 8(a)(2) requires only a short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (internal quotation marks and citations omitted). Although a complaint does not need detailed factual allegations to survive a 12(b)(6) motion to dismiss, the complaint must show an entitlement to relief through more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See, e.g., Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). The "[f]actual allegations must be enough to raise a right to relief about the speculative level."

4

*Twombly*, 550 U.S. at 555. Put differently, "[the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570).

Because federal jurisdiction here rest on diversity, the Court looks to North Carolina law to determine the governing substantive law. [DE 1]. *See Klaxon Co. v. Stentor Elc. Mfg.*, 313 U.S. 487, 496-97 (1941); *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 67 F.4th 648, 653 (4th Cir. 2023). Because the parties have not disputed that under North Carolina's choice of law rules, North Carolina law governs, the Court's analysis ends here. [DE 1, 5, 9, 10]. *See Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 n.4 (4th Cir. 2019).

A.  Count One: Negligence.

"To withstand a [Rule 12(b)(6)] motion to dismiss, plaintiff's negligence claim must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Sterner v. Penn*, 583 S.E.2d 670, 673 (N.C. Ct. App. 2003) (internal quotation marks omitted). When reviewing a negligence claim, the Court must first determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff, because "[i]f no duty exists, there logically can be neither breach of duty nor liability." *Synovus Bank v. Coleman*, 887 F.Supp.2d 659, 672 (W.D.N.C. 2012) (quoting *Harris v. Daimler Chrysler Corp.*, 638 S.E.2d 260, 265 (N.C. Ct. App. 2006)). Thus, the Court will begin – and end – with an analysis of defendant's alleged duty.

In his complaint, plaintiff does not explain the type of relationship he and defendant maintain for purposes of his negligence claim. [DE 1]. However, in his response to defendant's

5

Rule 12(b)(6) motion, plaintiff appears to assert that he and defendant hold a fiduciary relationship. [DE 9]. Considering plaintiff's *pro se* status and the Court's obligation to construe plaintiff's complaint liberally, the Court will analyze the obligations – if any – that defendant has to plaintiff in a fiduciary relationship. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal proceedings drafted by lawyers."); *see also Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (a court is not required to "discern the unexpressed intent of the plaintiff").

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 548 S.E.2d 704, 707 (N.C. 2001). While North Carolina courts have been hesitant to specifically define the term "fiduciary relationship," the North Carolina Supreme Court broadly defines such a relationship as one "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F.Supp.2d 386, 404 (M.D.N.C. 2002) (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931)). Such confidential relationships "are not limited to a purely legal setting but may be found to exist in situations which are moral, social, domestic, or merely personal." *Rhone-Poulenc Argo S.A. v. Monsato Co.*, 73 F.Supp.2d 540, 545 (M.D.N.C. 1999) (quoting *Curl v. Key*, 316 S.E.2d 272, 275 (N.C. 1984)). In general, North Carolina recognizes "two types of fiduciary relationships: (1) those that arise from 'legal relations such as attorney and client, broker and client, principal and agent, trustee and *cestui que* trust,' and (2) those that exist 'as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'" *Rhone-Poulenc*, 73 F.Supp.2d at 546 (quoting *Abbitt*, 160 S.E. at 906) (cleaned up).

6

At issue here is the extent of the relationship created between defendant and plaintiff via the CLJA litigation. [DE 1, 5, 9]. Specifically, the parties dispute whether the Court's various CMOs imposed a duty on defendant to represent *all* the parties' individual claims under the CLJA. [DE 1]. Plaintiff contends that by his designation as Lead Counsel in the CLJA litigation, defendant has accepted a duty to "put forth a complaint that represents all" of the CLJA claimants (including plaintiff). [DE 1]. In response, defendant contends that his lobbying efforts and appointment as Lead Counsel do not establish an actionable duty for purposes of plaintiff's negligence claim. [DE 6]. The Court agrees with defendant.

In reaching its conclusion, the Court looks to *Casey v. Denton, et al.*, for guidance. *See* No. 3:12-cv-521, 2018 WL 4205153, at *4-*8 (S.D. Ill. Sept. 4, 2018). In *Casey*, the Southern District of Illinois rejected plaintiff's argument that defendants' position as leadership counsel for multidistrict litigation created a duty to serve as "individual attorneys for all cases comprising a[] [multidistrict litigation]." *Id.* at *3 (internal quotation omitted). In doing so, the court rested on the proposition that one's duty to another individual exists only "within the boundaries set by the agreement initially creating the relationship." *Id.* at *4. As such, the court concluded that "[a]ny proposed function and/or responsibility to be imposed on leadership counsel may only emanate from the document giving rise to that group's duties." *Id.* at *4-*5. The court then analyzed the document that created a relationship between leadership counsel and plaintiff and concluded that, based on the boundaries set forth in the documentation, leadership counsel's duty was to "put the common and collective interests of all plaintiffs first while they carry out their enumerated functions." *Id.* at *5. In reaching this conclusion, the court emphasized that such a duty was distinct from "making leadership counsel liable to respond to every individual motion and request filed in

7

each singular case." *Id.* Critically, in *Casey*, the document creating a relationship between the parties was also a Case Management Order. *Id.* at *4-*7.

While the CLJA litigation is not a classic multidistrict litigation, the Court's CMOs are based upon "the procedures recommended for multidistrict litigation from the *Manual for Complex Litigation Fourth.*" [DE 23]. Thus, like *Casey*, any duties created between the parties before this Court are "limited to" the CMO order that established the relationship in the first instance. *Id.* at *4.

While this Court's CMOs do impose various tasks upon the defendant, they also, in turn, set the limitations of defendant's obligations. For example, in one CMO, the Court instructed defendant, as Lead Counsel, to "[c]all meetings," "serve as spokespersons," handle "any oral or written motions," and complete "meet and confers with the United States." [DE 10]. Simultaneously, the CMOs informed individual plaintiffs that any determination of "common questions of fact or law shall not operate to deny any Party the opportunity to raise nonrepetivie issues that uniquely affect each Party in individual CLJA actions." [DE 23]. Further, the CMOs did not designate defendant with the responsibility to oversee "matters specifically directed to individual plaintiffs and their counsel," nor did the CMOs "expand or create a protection or privilege that a Party does not otherwise already possess." [DE 10, 23]. Notably absent within the CMOs is, however, any requirement for defendant to specifically advocate for each plaintiff by submit "a complaint that represents all" of the CLJA claimants, including plaintiff. [DE 1].

In complex, demanding proceedings such as the CLJA litigation, the purpose of Leadership Counsel "is to ensure the expeditious, fair and economical running of a litigation that contains vast and plentiful information and issues." *Casey*, 2018 WL 4205153 at *7. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. MDL 05-1720(JG)(JO), 2006 WL

2038650, at *2 (E.D.N.Y. Feb. 24, 2006) (recognizing appointment of leadership counsel as "a useful and helpful way to avoid duplication of effort and as a means to streamline what could otherwise be inefficient and unruly proceedings"). And in asking this Court to order defendant to act on behalf of not just plaintiff – but *all* CLJA claimants, plaintiff is requesting a framework that not only undermines the purpose of leadership appointments but would further "make such leadership positions unmanageable and unworkable." *Casey*, 2018 WL 4205153 at *6. Accordingly, because plaintiff has not established that defendant had an actionable duty via their relationship, count one of plaintiff's claim must be dismissed pursuant to Rule 12(b)(6). [DE 1].

    B.    <u>Count Two: Fourteenth Amendment.</u>

The Court will further grant defendant's Rule 12(b)(6) motion to dismiss count two of plaintiff's complaint. [DE 5]. Plaintiff contends that defendant's involvement in lobbying the United States Congress to pass the CLJA violated plaintiff's right to due process under the Fourteenth Amendment. [DE 1]. However, because the Fourteenth Amendment applies to actions taken by a state, rather than the federal government, plaintiff's claim fails. *See, e.g., In re Guantanamo Detainee Cases*, 355 F.Supp.2d 443, 480 (D.C. Cir. 2005) (dismissal of Fourteenth Amendment claims in action against the federal government); *Taylor v. United States*, 320 F.2d 843, 846 (9th Cir. 1963) ("The Fourteenth Amendment applies to state, not federal action"); *Okpala v. Jordan*, 193 F. App'x 850, 852 (11th Cir. 2004) (holding "the claims against FCI and Warden Jordan under the Contracts Clause and the Fourteenth Amendment must be dismissed because those provisions apply to the States, not the Federal government"); *United States v. Edwards*, 98 F.3d 1364,1368 (D.C. Cir. 1996) (explaining how because "the fourteenth amendment does not apply to the federal government; an equal protection challenge to the statute

9

must be raised under the fifth amendment instead"). Consequently, count two of plaintiff's claim must be dismissed pursuant to Rule 12(b)(6). [DE 1].

## CONCLUSION

As the materials before the Court are adequate and oral argument would not aid the Court in its decision, plaintiff's motion for a hearing is DENIED. [DE 14]. Further, plaintiff's motion for an entry of default is DENIED. [DE 9]. Defendant's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED and plaintiff's claim is DISMISSED. [DE 5].

SO ORDERED, this 27 day of September 2024.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE